JOHN B. MILLER et al.

v.

THEODORE A. SHAW et al.

*Filed at Ottawa June 21, 1882.*

1. RECORDING LAW—*deed first recorded must prevail.* Where a deed of trust on certain real estate given to secure an indebtedness of the grantor is recorded before any other deed made by him is filed for record, a regular foreclosure of the trust deed by a sale that would bar the grantor's equity of redemption, will cut off and bar all claim of title of parties claiming under a deed from such grantor, which was recorded after the trust deed.

2. ADMISSION—*asserting title under trust deed—admission thereby.* If a party procures a conveyance of real estate from one whose title is derived from a sale of the premises under a trust deed, and asserts title thereunder, that is an admission that the foreclosure of the trust deed and the trustee's deed to the purchaser were regular and effective to pass the estate of the grantor in the trust deed.

3. DECLARATION OF TRUST—*destroyed by sale under prior deed of trust.* If there be a valid sale and conveyance of land by a trustee under a power in the deed of trust to him, such action will cut off all rights of third parties under a declaration of trust made by the grantor in the trust deed after the recording of the trust deed.

4. EVIDENCE—*recitals in trustee's deed.* Where a trustee assumes to sell land under a power in a deed of trust, the recitals in his deed are made by statute evidence of the facts so recited therein.

5. SECONDARY EVIDENCE—*abstracts of title where deeds and records are destroyed.* Where original deeds, as well as the record books in which they were recorded, have been destroyed by fire, and neither party is able to produce copies of such deeds, resort may be had to secondary evidence to prove their contents, and by the act of 1872, in relation to lost or destroyed

records of conveyances, abstracts of title made by persons engaged in abstracting titles, are made evidence in all courts of law or equity, and may be received to prove the contents of such deeds.

6. Trustee's deed—*whether showing sale of several, or only one lot.* Where a trustee under a deed of trust conveying several lots, after a sale by him, conveys to the purchaser all such lots, and in one part of his deed recites the sale by him of one lot, this will not defeat his deed for the other lots when from the whole deed and all its recitals it sufficiently appears he made sale of all the lots conveyed.

7. Laches—*in avoiding sale under deed of trust.* Where lots of a person were sold under a deed of trust given by him, and he acquiesced in the trustee's sale and conveyance up to the time of his death, which was more than seven years after the sale, during which time others acquired title under that sale, and no claim was set up to the property by the heirs of the grantor for more than twenty years after the sale, it was *held,* that both the grantor and those claiming under him were estopped to deny that the trustee's sale and deed were valid, and that they were barred by their *laches.*

8. So, where a trustee, under a power in a trust deed, sold and conveyed all the lots embraced in the trust deed, more than six years before the grantor's death, and the grantor knew of such sale, and that the purchaser claimed all the lots, the latter frequently applying to the grantor to raise the money with which to pay the indebtedness, or to take back the property, which he failed to do, and finally the grantor told the purchaser to keep the property and do the best he could with it, as he could not do anything more, this was *held* such an acquiescence in the sale as to estop him and those claiming under him from asserting title to the lots, and that his *laches* was a bar to any equitable relief.

9. Married woman—*deed of her separate property under law in 1867.* All that was required by the laws in force in 1867, to enable a married woman to convey her real estate, was that she and her husband should execute the deed, after which she should appear before a proper officer and acknowledge the same in the mode pointed out in the statute, and such deed being acknowledged by the husband, or his execution thereof proven according to law, it was effectual to pass the title to the wife's separate property.

10. In the beginning of a deed for the separate real estate of a wife, where the parties are first stated, "A B, in her own right, wife of C D," was named as party of the first part, and her husband was not otherwise named in that clause of the deed as the party making the grant, but in the clause releasing the homestead the husband was named as "party of the first part," and so in the covenanting and attesting clauses, and he also signed and acknowledged it as his and his wife's deed: *Held,* that even if the statute of 1845 required the husband to join in the granting clause, that fact was sufficiently shown by the deed, taking the whole of it together.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the appellants:

If a trustee or attorney in fact executes a deed, the person claiming title under such deed must produce the power or authority under which such deed was executed. *Jackson* v. *Roberts,* 11 Wend. 425; *Elliott* v. *Pearce,* 20 Ark. 508; *Tolman* v. *Emerson,* 4 Pick. 162; 2 Cowen H. & E. notes to Phillips on Evidence, p. 471, note 429; *Hinman* v. *Pope,* 1 Gilm. 131; *Bybee* v. *Ashby,* 2 id. 151; *Atkins* v. *Hinman,* 2 id. 437; *Penrose* v. *Griffith,* 4 Binn. 231; *Jackson* v. *Anderson,* 4 Wend. 482.

Recitals in a deed are no evidence of anything against parties who do not claim under such deed. *Penrose* v. *Griffith,* 4 Binn. 231.

It is not an admission that the title is in a party because the true owner takes a deed from him, or gets up such outstanding claim. *Owen* v. *Robbins,* 19 Ill. 545.

By the recitals in the trustee's deed from Strauss to Culbertson, only lot 3 was sold, while all six of the lots in question were conveyed. As to the lots not sold, the deed conveyed only the legal title, leaving the equity of redemption in Doolittle not foreclosed. *Walwork* v. *Derby,* 40 Ill. 527.

The indebtedness fell due October 5, 1857, and the same is barred, and the presumption of law is, that it has been paid, and the title is left free of all incumbrance. *Mester* v. *Hauser,* 94 Ill. 433.

The husband not joining the wife in the conveying part of the deed, it was void as to both, and conveyed no title to Ward. It was held in *Hogan* v. *Hogan,* 89 Ill. 427, that the mere consent of the husband in the same writing did not fulfill the statute. The law is, that the husband must be a grantor with the wife. *Leavitt* v. *Lamprey,* 13 Pick. 382; *Lufkin* v. *Curtis,* 13 Mass. 222; *Catlin* v. *Ware,* 9 id. 219;

*Jewett* v. *Davis,* 10 Allen, 70; *Bruce* v. *Wood,* 1 Metc. 542; *Warner* v. *Peck,* 11 R. I. 431; *McFarland* v. *Febiger,* 7 Ohio, 337; *Percell* v. *Goshorn,* 17 id. 123; *Kern* v. *Peeler,* 4 Jones, (N. C.) 226; *Gray* v. *Mathis,* 7 id. 502; *Hammond* v. *Thompson,* 56 Ala. 591; *Agricultural Bank* v. *Rice,* 4 How. 241; *Lawrence* v. *Heister,* 3 Harris & J. 371; *Baxter* v. *Bodkin,* 25 Ind. 172; *Cox* v. *Wells,* 7 Blackf. 410; *Hedges* v. *Ward,* 15 B. Mon. 106.

A party may claim title from several sources, and he may show that he holds the paramount title from any one of these sources. *Owen* v. *Robbins,* 19 Ill. 555; *McClurken* v. *McClurken,* 46 id. 230; *Blight* v. *Rochester,* 7 Wheat. 535; *Osterhout* v. *Shoemaker,* 3 Hill, 513; *Watkins* v. *Holman,* 16 Pet. 54; Bigelow on Estoppel, 251, note 3, pp. 260, 335.

Messrs. GRANT, SWIFT & BRADY, for the appellees:

Appellants are barred by the gross neglect and *laches* of their ancestor and their own. *Hamilton* v. *Lubukee,* 51 Ill. 415; *Munn* v. *Burges,* 70 id. 604; *Dempster* v. *West,* 69 id. 613; *Winchell* v. *Edwards,* 57 id. 45; *Walsh* v. *Brennan,* 52 id. 193.

That there was a power of sale in the trust deed sufficiently appears from the abstract of title and the recitals in the trustee's deed. *Graham* v. *Anderson,* 42 Ill. 515; *Weld* v. *Rees,* 48 id. 437; *Strother* v. *Law,* 54 id. 413; *Burr* v. *Borden,* 61 id. 389.

It is claimed that the trustee's deed to Strauss shows that only one out of the six lots thereby conveyed was sold by the trustee. Taking the whole deed together, no such inference can be drawn. In construing deeds, etc., the entire instrument, including its recitals and covenants, must be taken together, and the intention thus gathered must prevail. *Walker* v. *Douglass,* 70 Ill. 445; *Peckham* v. *Paddock,* 36 id. 38; *Swift* v. *Lee,* 65 id. 336; *Alton* v. *Illinois Transportation Co.* 12 id. 38.

Messrs. SCHUYLER & FOLLANSBEE, also for the appellees:

The proof tends to show that the trust deed to Scoville contained a power of sale. If, either through the proof offered, it appears there was a power of sale, or a presumption, even, is raised of that fact, no matter how defectively the same was executed, the appellees, as remote *bona fide* purchasers, will be protected, and it therefore becomes unnecessary to show anything beyond the mere fact that such a power existed. *Gunnell* v. *Cockerill,* 79 Ill. 79; *Hoag* v. *Gibbons,* 95 id. 45; *Wilson* v. *South Park Comrs.* 70 id. 46; *McNary* v. *Southworth,* 58 id. 473; *Hamilton* v. *Lubukee,* 51 id. 415; *McHaney* v. *Schenk,* 88 id. 357; *Bush* v. *Sherman,* 80 id. 160; *Munn* v. *Burges,* 70 id. 604; *Kellogg* v. *Wilson,* 89 id. 357; *Farrar* v. *Payne,* 73 id. 82; *Pratt* v. *Stone,* 80 id. 440; *Mulvey* v. *Gibbons,* 87 id. 367; *Jenkins, Assignee,* v. *Pierce et al.* 98 id. 646.

A. J. Miller, and those claiming under him, are estopped from questioning the validity of the foreclosure of either trust deed, by standing by for years seeing another hold himself out as owner under such foreclosure, and deal with it as his own, and allow the property to change hands for valuable considerations. *Cochran* v. *Harrow,* 22 Ill. 345; *Jenkins* v. *Pierce et al.* 98 id. 646.

Mr. EDMUND S. HOLBROOK, also for the appellees:

Even admitting defects of conveyances affecting appellees' title, it is sufficient to reply the *laches* of appellants, and the fact that appellees are *bona fide* purchasers without notice. *Higgins* v. *Curtiss,* 28 Ill. 28; *Cox* v. *Montgomery,* 36 id. 398; *Hamilton* v. *Lubukee,* 51 id. 415; *Winchell* v. *Edmunds,* 57 id. 46; *Burr et al.* v. *Borden et al.* 61 id. 390; *Conover* v. *Musgrave,* 68 id. 58; *Wilson* v. *South Park Comrs.* 70 id. 46; *Munn* v. *Burges,* id. 606; *Farrar* v. *Payne et al.* 73 id. 82; *Gunnell* v. *Cockerill,* 79 id. 79; *Bush* v. *Sherman,* 86 id. 160; *Heinander* v. *Drake,* 81 id. 34; *McNab* v. *Young,* id. 12;

*Kœster* v. *Burke,* id. 439; *Williams* v. *Rhodes,* id. 571; *Gunnell et al.* v. *Cockerill,* 84 id. 319; *Fairman* v. *Peck,* 87 id. 156; *Mulvey* v. *Gibbons et al.* id. 367; *McHaney* v. *Schenk,* 88 id. 357; *Kellogg* v. *Wilson,* 89 id. 357; *Gibbons* v. *Hoag,* 95 id. 47; *Jenkins, Assignee,* v. *Pierce et al.* 98 id. 646.

These conveyances by the trustee are not void, for the sale by the trustee, however wrongful, or whether he performs or not, transfers the legal title. *Reese* v. *Allen, Admr.* 5 Gilm. 236, and notes; *Anderson* v. *Graham,* 42 Ill. 514; *Dawson* v. *Hayden et al.* 67 id. 52; *Kœster* v. *Burke,* 81 id. 439.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The original petition in this case was filed by Louis A. Doolittle, since deceased, in the circuit court of Cook county, under the act of 1872, commonly known as the "Burnt Records act," and was to confirm in him the title to lots described in the petition. To his petition, which was filed on the 1st day of June, 1874, a number of persons claiming to be the owners of the property, or at least claiming an interest in it, were made parties. Some of these defendants answered, and filed cross-petitions, in which they ask to have the title to the lots described, or some of them, confirmed in them. Afterwards, September 4, 1877, the parties prosecuting the present appeal, and who describe themselves as heirs at law of Andrew J. Miller, deceased, filed a cross-petition, in which they asked to have confirmed in them the title to all the lots in controversy. Issues were joined on the answers to the original and cross-petitions, and on the hearing the court found the title to one lot to be in Shaw, Honore and Heywood, the title to another to be in Dale, and the title to all of the other lots to be in Grubb, who had succeeded to the title that was in John L. Reynolds in his lifetime. The Miller heirs bring the case to this court on appeal. Since the original petition was filed Louis A. Doolittle has died, and the interest that he claimed in the property is not now

pressed on the attention of the court in behalf of his repre-
sentatives. Excepting lot 18, Doolittle never claimed more
than to hold the legal title to the other lots in trust for
the heirs of Andrew J. Miller. The real contest is between
the heirs of Miller and the other defendants claiming the
paramount title to the property.

It may be remarked in the outset that the claim to the
property put forth by the parties prosecuting this appeal
has few, if any, equitable considerations in its support. The
property was pledged by their ancestor for the payment of
borrowed money. There is no pretense the indebtedness for
which it was pledged was ever paid, other than by the con-
veyance of the property itself to the creditor by the trustee
of the debtor. It passed to the creditor at its full value at
the time, and has since been claimed by such creditor and
his grantees, who have since paid all taxes and assessments
upon it, as *bona fide* owners would do. More than twenty
years have elapsed since the trustee conveyed the property
to the creditor of Andrew J. Miller, on default being made in
the payment of his indebtedness. Now it is said, the indebt-
edness secured is barred by the Statute of Limitations, and
as there are some defects or want of adequate power in the
execution of the deeds of trust that secured such indebted-
ness, or in the execution of other deeds in the chain of title,
the heirs of the deceased debtor, as counsel are understood to
present their claim, ask to have the title to the property con-
firmed in them, free from any incumbrance placed on it by
their ancestor, notwithstanding so much delay has intervened
before the assertion of any title by them, and that the prop-
erty has since become very valuable, and passed into the
hands of *bona fide* holders for very large considerations.

The common source of title claimed by the respective par-
ties is John C. Miller, who had a deed to all the lots from
Francis A. Hoffman. The claimants in this appeal insist
upon title to the property from three distinct sources: First,

through John C. Miller, in whom it is conceded the title was, and who conveyed it to Andrew J. Miller, and from him, through *mesne* conveyances, the title to the property is said to have come to George N. Williams, who conveyed it to them; second, through Louis A. Doolittle, by a declaration of trust; and third, from L. Martha Sheldon, by deed of conveyance directly to them. On the other hand, defendants in this appeal deraign title to the property through a trust deed from John C. Miller to Scoville, which was executed and recorded prior to John C. Miller's deed to Andrew J. Miller; second, under Scoville, through a trustee's deed, from Strauss; and third, under Strauss, through a prior deed from L. Martha Sheldon.

It is apparent the trust deed from John C. Miller to Scoville being oldest in point of time, and first on record before any other deed made by him, if that trust deed was so foreclosed as to cut off the equity of redemption that remained in him before his conveyance to Andrew J. Miller, it would bar all claim of the present claimants to the property through their father to George N. Williams, and from Williams to them, and also all claim from their father, save what they might take, if anything, through the declaration of trust in their favor by Louis A. Doolittle. Whatever title, if any, claimants obtained under the deed from L. Martha Sheldon, it was by purchase of the property, and not as heirs of Andrew J. Miller. Claiming under the latter deed is an admission the foreclosure of the trust deeds to Scoville and Strauss were regular, and were effective to pass the equitable estate of their ancestor in the property. Two questions are then presented: First, whether claimants take any interest in the property as heirs at law of Andrew J. Miller; and second, whether they obtained any title by their purchase from L. Martha Sheldon. Of course, if the title passed under the deed from Strauss to Culbertson, the subsequent declaration of trust by Doolittle, the grantor in the trust deed to

Strauss, that he held the legal title for the Miller heirs, is a matter of no consequence, and that branch of the case will not be further remarked upon.

It will be necessary to state the facts a little more fully in order to a clear understanding of the objection taken to the deed of Scoville to Greenebaum, which is the real source of the title claimed by the defendants in this appeal, and upon which much stress is laid in the argument on behalf of the parties challenging its validity. The trust deed made by John C. Miller and wife to George Scoville, bears date October 17, 1856, and was given to secure a note made by Andrew J. Miller, payable to his own order, nine months after date, at the office of Swift, Ransom & Co., in New York, for the sum of $3000, with interest after due, at ten per cent per annum. It was recorded on the 18th day of October, in the same year. This deed covers the property in controversy, and as has been seen, is the first in defendants' chain of title. Default was made in the payment of the note, and on the application of the holder, Scoville advertised the property and sold it to Henry Greenebaum for $3100, and made him a deed for it, bearing date August 5, 1857, and which was duly recorded in the proper office. The originals of these deeds were both destroyed by fire in October, 1871, so that neither party is able to produce the originals, or a copy of either deed. It was necessary therefore to resort to secondary evidence to ascertain their contents, and under the act of 1872 in relation to lost or destroyed records of conveyances, abstracts of title made by persons engaged in that business are admissible in evidence in all courts of law or equity. The objection taken to the deed from Scoville to Greenebaum is, that the trust deed from Miller to Scoville contained no power of sale authorizing the trustee to make a sale of the property that would cut off the grantor's equity of redemption. This, it is thought, is a misapprehension of the evidence. The recitals in the deed from Scoville to Greenebaum are quite fully set

forth in the abstract introduced, and which is made evidence of the facts it contains, by the statute. It is recited that John C. Miller and his wife executed to Scoville, as trustee, a trust deed on the property, to secure the note of Andrew J. Miller, and in default of payment application was made by Swift, Ransom & Co., the legal holders, to Scoville, to sell the premises for the purposes in such deed expressed, and that in pursuance of such application a sale of the premises had been made by Scoville, after the same had been advertised in a public newspaper, and that at such sale Henry Greenebaum bid off each lot at a certain price, and in consideration thereof Scoville, as such trustee, conveyed the lots to the purchaser. There is some parol evidence tending to show the trust deed to Scoville did in fact contain the usual power of sale, but that may be disregarded as not entirely satisfactory. Regarding only the evidence found in the abstract of title, it seems impossible for any one to read it without being satisfied the Scoville trust deed did contain the usual power of sale. The recitals it is shown the deed contained make that impression on the mind, and no reasoning, however subtle or confidently asserted, can remove that impression. It is inconceivable that any one having any business sense would make application to the trustee to sell the trust property to pay his debt, when the trust deed conferred no power on the trustee to make such sale, and it is still more unreasonable to believe any trustee would assume to make such a sale under a deed, presumably in his possession, that gave him no authority to act in the premises. The acts of these parties must have a reasonable construction, and especially when considered a quarter of a century after they transpired, when the evidence of what they did can at best be only imperfectly produced. It certainly ought to be understood these parties acted with the same common sense possessed by business men transacting such matters. Unless the Scoville trust deed contained the usual power of sale that

would enable him to sell the property as he did, as the attorney of the grantor, to pay the note secured, the acts of all parties concerned are meaningless and senseless. But construing the trust deed as containing a power of sale, then the conduct of the parties is consistent and intelligible, and conforms to the conduct of sensible business men in such matters. Why did the holders of the note make application to the trustee to sell the premises, for the purposes in the deed expressed, if the deed contained no such authority? Or why did the trustee advertise the property for sale in a public newspaper, unless it was in conformity with the provisions of the trust deed authorizing a sale to be made? Giving to these acts of the trustee and the holders of the note, and other parties concerned, that reasonable construction that would ordinarily be placed on the conduct of business men, it seems impossible to resist the conclusion forced upon the mind by the proof introduced, that the trust deed contained a power of sale. Any other conclusion would be most unreasonable, and could only be reached by placing the most absurd construction upon the conduct of men that must be presumed to have had ordinary business sense. It follows that under the Scoville deed the property passed absolutely to Henry Greenebaum, and hence the equity of redemption that had been in John C. Miller, and all persons claiming under him, was forever barred.

Passing to the consideration of another branch of the case, it appears that on the same day he obtained the deed from Scoville, Henry Greenebaum conveyed the property to Louis A. Doolittle, and Doolittle, on the same day, conveyed it by deed of trust to Samuel Strauss, to secure the note of Andrew J. Miller, bearing the same date, and payable to Elias Greenebaum, sixty days after date, for $3100, with ten per cent interest, which trust deed contained a warrant of attorney authorizing a sale of the property for the payment of the note in case it was not paid at maturity. It is apparent the

transaction was by the consent of all the parties interested, and was for the personal benefit of Miller, that he might secure that which was equivalent to an extension of his former loan. Default was made by Andrew J. Miller in the payment of this second note, and on the application of the holder the trustee (Strauss) advertised the property for sale, and at the sale Culbertson, who had become the holder and owner of the note, bid in the property, and received a trustee's deed from Strauss conveying all the lots to him. An objection to the sufficiency of the deed from Strauss to Culbertson is insisted upon, but if it shall be ascertained that deed is effectual to pass the title to Culbertson, it must be conceded that *mesne* conveyances from him placed the absolute title in fee simple to the property in L. Martha Sheldon.

The original deed from Strauss to Culbertson is in evidence, and there can be no misunderstanding as to what it contains. The defect pointed out to the deed is, that although all the lots in controversy were conveyed by the trustee to Culbertson, the recitals show that only the "first tract," viz: lot 3, was bid off by him. The objection is hypercritical in the extreme. Parol evidence given shows that all the lots were in fact bid off by Culbertson at the trustee's sale; but all such evidence may be rejected, and still it sufficiently appears, when all the recitals of the deed are considered together, as they should be, that all of the lots were sold to Culbertson. It is idle to talk about the deed having any other meaning consistent with the common understanding of the language used in the deed to express what was done.

But the decision, so far as the appealing claimants insist upon title from their father, Andrew J. Miller, may be placed on another ground. His claim, whatever it may have been, was barred by what the law calls *laches*, before his death, and certainly his heirs will not be permitted to assert a claim barred in the lifetime of their ancestor. It will be remembered the deed from Scoville to Greenebaum was made in

August, 1857, more than twenty years before these claimants filed their cross-petition asking the court to confirm the title to the property in them. It will also be remembered that Andrew J. Miller did not die until September 2, 1864, which was more than seven years after the date of the deed of Scoville to Greenebaum. It can not be denied that Andrew J. Miller acquiesced in the making of that deed, for it was, as has been seen, made for his benefit, and, under the circumstances, presumably with his consent and others interested, and since others have acquired title in good faith under it he will be estopped to deny it was a valid deed.

As respects the deed from Strauss to Culbertson, it was made April 30, 1858, which was more than six years before the death of Andrew J. Miller. He knew of the sale of the property to Culbertson, and that he claimed all the lots under his deed from Strauss. He was frequently applied to by the purchaser to raise the money with which to pay his indebtedness, and take back the property. This he failed to do, and finally he told Culbertson he would have to take the property and do the best he could with it, as he could do nothing more. It would be most improbable to suppose the parties were talking about the "first tract," lot *three.* No doubt is entertained that they were talking concerning all the lots embraced in the deed, the ownership of which Miller well knew Culbertson was claiming under the trustee's deed to him. What Miller did was an acquiescence in the sale and an abandonment of the property. It does not appear he ever afterwards set up any claim to any of the lots. The doctrine of *laches,* as applicable to the facts of this case, is stated by this court in *Sherman* v. *Bush,* 80 Ill. 160, where it is said: "Unreasonable delay, not explained by equitable circumstances, has always been declared evidence of acquiescence in the sale, and a waiver of all mere irregularities. A party will not be permitted to delay to enable him to speculate on the chances of an appreciation in values of the

property, and elect to avoid the sale only when it will be profitable to do so. He must make his election at the earliest practicable moment." The case cited has many features in common with the one being considered, as respects the *laches* of the party claiming to be the equitable owner of the property. Default had been made in this case, as in that, in the conditions of the trust deed, and all that remained to the ancestor of the appealing claimants, under the most favorable construction, was the equity of redemption, of which he might have availed had the alleged defects existed in the sales made by his trustees. Relief in no view could be had except in a court of chancery, and upon terms that should be just to all parties. At the trustee's sale the property brought its full value, and the evidence shows most conclusively no great speculation could have been anticipated, shortly after the latter sale, by a redemption of the property. If what was done by Miller and others interested could be treated as a redemption of the property from the sale made by Scoville, the evidence is full to the point Miller expressly refused to make any further effort to redeem the property from the sale made by Strauss, but in fact abandoned it to his creditor. Since then the property has increased many times in value, and the heirs of the alleged equitable owner deem it desirable now the sales and conveyances may be avoided, and as the indebtedness secured has long since been barred by the Statute of Limitations, that they may have the title to the property confirmed in them free from all incumbrances. This accords with no sense of right and justice. Applying to the facts of the case the doctrine of *laches*, as may be done, it is plain the ancestor of claimants, at the time of his death in 1864, could not have asserted any claim to the property, and certainly his heirs will not be permitted to assert a claim that he could not do.

It has been seen that whatever title Culbertson had in the property, passed to L. Martha Sheldon by a regular chain of

conveyances, and assuming, as is warranted by both the law
and the evidence, the title in her was unassailable, either by,
the former equitable owner, if now living, or by his heirs
since his death, the remaining questions to be considered are,
whether that title passed to defendants in this appeal by her
deed of February 8, 1867, or to the present claimants by her
deed of June 22, 1877. This latter deed was made since the
original petition in this cause was filed, and was for the
nominal consideration of fifty dollars. It is a quitclaim deed,
and contains no covenants.

Mrs. Sheldon, at the time of the making of the deed of
February 8, 1867, to Ward, under which defendants deraign
title, was a married woman, living with her husband, Seth
Sheldon, Jr., and the defect said to exist in the deed is that
her husband did not join with her in the granting clause of
the deed so as to pass the title to her separate property, as
this was. The statute then in force in relation to convey-
ances of real estate by a married woman, provided when any
husband and wife residing in this State shall wish to convey
the real estate of the wife, it shall and may be lawful for the
husband and the wife, she being above the age of eighteen
years, to execute any grant, bargain, sale, lease, re-lease,
feoffment, deed, conveyance or assurance in law whatsoever.
for the conveying of such lands, tenements and heredita-
ments; and if, after the executing thereof, such wife shall
appear before some judge, or other officer authorized to take
acknowledgments of such instruments, and acknowledge the
same, after having been made acquainted with its contents
by such officer, and such deed being acknowledged or proved
according to law as to the husband, shall be as effectual in
law as if executed by such woman while sole and unmarried.
That which this statute requires to be done to enable the
wife to convey her separate property is, that she and her
husband shall execute the deed, and after that she shall
appear before a proper officer and acknowledge the same in

the mode pointed out in the statute, and such deed being acknowledged or proved according to law by the husband, it will be as effectual to pass the title to the wife's separate property as the deed of an unmarried woman would be to convey her property. All this was done in this case. Both Mrs. Sheldon and her husband, Seth Sheldon, executed the deed to Ward, and afterwards she appeared before a proper officer and acknowledged it in conformity with the statute, and the acknowledgment of her husband to the deed being according to law, that seems to be all the law requires to be done to make the deed effectual to pass the title to the wife's separate estate.

But if more is required, and it shall be held the statute is imperative the husband shall join with the wife in the granting clause of the deed, it may be said, when the whole deed is read together, it sufficiently appears he also joined with her in the granting clause of this deed. It is true that in the beginning of the deed, where the parties to it are first stated, it is said, "L. Martha Sheldon, in her own right, wife of Seth Sheldon, Jr.," is the party of the first part, and her husband is not otherwise named in that clause of the deed as the party making the grant, but in the clause of the deed releasing the homestead the husband is named as being "party of the first part," and so also in the covenanting clause of the deed he is again named as "party of the first part," and the same is true as to the attestation clause of the deed. It will be noticed that in the covenanting clause of the deed, where the husband is mentioned as "party of the first part" with the wife, such party (that is, the husband and wife,) warrant that at the time of the making of the deed they were well "seized of the premises above conveyed"—that is, by the granting clause of the deed—"as of a good, sure, perfect, absolute and indefeasible estate of inheritance, in law and in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same, in manner and form

aforesaid." Who is it that is seized of the premises above "conveyed," and has "lawful authority to sell and convey, in manner and form as aforesaid?" It is and can be no other than the "party of the first part," the grantors in the deed, of which the husband and wife both say the husband is one. It is three times repeated the husband is a party of the "first part" mentioned in the deed, and to hold by construction he is not a party of the "first part" who are grantors in the deed, is to disregard what the husband and wife have both covenanted he is. It is obvious to any one reading the whole deed together, the husband executed the deed with his wife as grantor to pass the title to the wife's separate property, and the deed being acknowledged in conformity with the statute, it was effectual in law to pass the title to the grantee. As the deed of Mrs. Sheldon and her husband to Ward is the prior one in date and of record, and as that title passed by *mesne* conveyance to defendants in this appeal, it follows their title is paramount, and must prevail over the second deed from her to the other claimants.

The decree of the circuit court will be affirmed.

*Decree affirmed.*