## Bucklen v. Hasterlik.

1. FORFEITURE—*In Courts of Equity.*—It is undoubtedly a rule with courts of equity not to enforce either a penalty or a forfeiture.

2. TAXES—*Presumption of . Payment by Owner.*—Where it appears by an abstract of title, that for more than forty years lands have not been sold or forfeited for taxes, save for those of two years, and that during this period there has been but one record title to such lands, and no title adverse known to have been held or asserted, a fair presumption arises that the taxes upon such premises have, during such term, been paid by those claiming under such record title.

3. CONVEYANCES—*Ancient Deeds.*—Deeds of conveyance forty years old, are entitled to be considered as ancient documents, of the execution of which no further proof is required.

4. ANCIENT DOCUMENTS—*Proof.*—It is enough to entitle a document to be admitted in evidence to show that it bears upon its face marks of having been executed at least thirty years before, and that it comes from the custodians who would have possession of it if it were genuine. Such a document proves itself.

Bucklen v. Hasterlik.

5. DEEDS—*Proof of Ancient Deeds.*—To entitle a deed to be admitted, some evidence in addition to proof of antiquity is required. Where possession has accompanied it, that of itself furnishes sufficient evidence of its authenticity to entitle it to be read without further proof, if it be more than thirty years old; possession is not, however, essential to admissibility; other things equivalent to it, or explanatory matter clearly indicating ownership may justify its admission.

6. ABSTRACT—*Title Free from Reasonable Doubt.*—Where an abstract of title showed several deeds for more than forty years recorded in the proper office, and numerous recorded transactions of large importance running through a period of many years under them, the taxes having apparently been paid by the claimants thereunder, and no hostile title being shown to have ever existed or been asserted, *it was held,* that so far as these deeds were concerned the abstract showed a title free from reasonable doubt.

7. CONTRACT—*Waiver of Provisions by an Attorney.*—An attorney, as such, has no power to waive the requirements of a contract and make a new bargain for his client; so held where a contract required the furnishing of an abstract showing a title free from material defects, and a conveyance of a good title, free from reasonable doubts.

8. TENDER OF A DEED—*When Unnecessary.*—Where a vendee objects to the title, a tender of a deed, which he declares he will not accept, is unnecessary.

9. INTERPLEADER—*Effect on the Original Parties.*—When an interpleader is awarded, the original complainant is out of the case, and the defendants should make their claims against each other by such allegations and offers as if they were original litigants.

10. ABSTRACT—*Objection to Must Be Made in Apt Time.*—An objection that an abstract of title is not such a one as a party is bound to furnish should be made within a brief time after the same is submitted for examination.

**Memorandum.**—Bill of interpleader. In the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Appeal. Heard in this court at the March term, 1893, and affirmed.

The statement of the facts is contained in the opinion of the court.

APPELLANT'S BRIEF, SMOOT & EYER, AND MONK & ELLIOTT, ATTORNEYS.

Appellant contended that a court of equity could offer appellee no relief without aiding in a forfeiture, a thing it will never do. Livingston v. Tompkins, 4 Johns. Ch. 416; Marshall v. Vicksburg, 82 U. S. 149; McCormick v. Ross, 70

Cal. 474; White v. R. R. Co., 13 Mich. 356; Crane v. Dwyer, 9 Mich. 380; Fitzhugh v. Maxwell, 34 Mich. 138; Mills v. Evansville Seminary, 47 Wis. 354; 52 Wis. 669; Clark v. Drake, 3 Chand. 253; Vale v. Drexel, 9 Brad. 446.

Possession of unincumbered title at a time fixed for completion of a contract and of a deed duly signed and ready for delivery, were conditions precedent, without performance of which appellant could not be called upon to do anything. Willingness to remove the incumbrance was only willingness to get ready, and did not show ability and readiness of appellee to perform at the time. Tyler v. Young, 2 Scam. 445; Bank of Columbia v. Hagnar, 1 Pet. 455; Conway v. Case, 22 Ill. 127; Morange v. Morris, 3 Keyes, 48; Williams v. Healy, 3 Denio, 364; Bigler v. Morgan, 77 N. Y. 312.

Mere antiquity of a deed is not a sufficient proof of its execution. Smith v. Rankin, 20 Ill. 14; Wilson v. Betts, 4 Denio 201; Havens v. Seashore Land Co. (N. J.), 20 Atl. Rep. 497; Cowan and Hill's Notes to Phillips' Evidence, 2d vol. pp. 475–480.

APPELLEE'S BRIEF, MORAN, KRAUS & MAYER, ATTORNEYS.

The title of real estate need not, like Cæsar's wife, be above suspicion. The objection must be something more than a mere speculation or theory. It can not be based on captious, frivolous, and astute niceties, but must be based upon such defect as produces a real *bona fide* hesitation in the mind of the chancellor. Lord Eldon in Stapleton v. Scott, 11 Ves. 27; see, also, Close v. Stuyvesant, 132 Ill. 619.

In Leake's Law of Contract, p. 579, it is said: "Performance of a condition is excused by the refusal of the other party to accept it. The party must show that he was ready; but if the other party stop him, on the ground of an intention not to perform his part, it is not necessary for the first to go further and do a nugatory act." See, also, Hunter v. Daniel, 4 Hare 420; Lyman v. Gedney, 114 Ill. 388; Jones v. Barkley, 2 Doug. 685; Shepler v. Green, 31 Pac. Rep. 42; Webster v. French, 11 Ill. 254.

The reason why a court of equity entertains a bill of interpleader is not that the claims of the conflicting claimants are of equitable cognizance, but rather that the complainant is in danger of being compelled, by separate actions at law, or part at law and part in equity, to render the same debt or duty to different parties.    Daniel, Chancery Practice, 1560.

The equitable jurisdiction of the court is invoked for the protection of the stakeholder, and not for the purpose of determining the rights among conflicting claimants, and it is only where the conflicting claims are all legal, or part legal and part equitable, that a bill of interpleader may be filed. Such a bill can not be filed where the conflicting claims are all of equitable cognizance.    Barclay v. Curtis, 9 Price's Repts. 661; Sturgess v. Claude, 1 Dowl. 305; Roach v. Wright, 8 M. & W. 155; Simon's Interpleader, 3–4.

Mr. Justice Waterman delivered the opinion of the Court.

On the 27th of April, 1891, a written contract for the purchase of certain real estate located in Chicago, Illinois, by Bucklen from Hasterlik was signed by the parties, Hasterlik signing for himself and Bucklen by H. S. Merritt & Co., agents.

The contract is as follows:

" This memorandum witnesseth that Charles Hasterlik hereby agrees to sell, and Herbert E. Bucklen agrees to purchase, at the price of $16,950, the following described real estate, situated in Cook county, Illinois:    The north one hundred and fifty (150) feet of the west half of block 4, in Charles Busby's subdivision of the south half of the southeast quarter of the northwest quarter of section 10, township 31 north, range 14 east of the principal meridian.    Subject to all taxes and assessments levied after the year 1890, and unpaid special assessments levied for improvements not yet made.

Said purchaser has paid $1,000 as earnest money, to be applied on said purchase when consummated, and agrees to

pay within five days after the title has been examined and found good, the further sum of $5,000, at the office of Jay Dwiggins & Co., Chicago, provided a good and sufficient warranty deed, conveying to said purchaser a good title to said premises, with waiver and conveyance of any and all estates of homestead therein, and all rights of dower, inchoate or otherwise (subject as aforesaid), shall then be ready for delivery. The balance to be paid as follows: $3,650 on April 27, 1892; $3,650 on April 27, 1893; $3,650 on April 27, 1894, with interest from this date at the rate of six per cent per annum, payable semi-annually, to be secured by notes and mortgage or trust deed, of even date herewith, on said premises, in the form ordinarily used by Jay Dwiggins & Co. A complete abstract of title, or merchantable copy, to be furnished within a reasonable time, with a continuation thereof brought down to cover this date. In case the title, upon examination, is found materially defective within ten days after said abstract is furnished, then, unless the material defects be cured within sixty days after written notice thereof, the said earnest money shall be refunded and this contract is to become inoperative.

Should said purchaser fail to perform this contract promptly on his part, at the time and in the manner herein specified, the earnest money paid as above shall, at the option of the vendor, be forfeited as liquidated damages, including commissions payable by the vendor, and this contract shall become null and void. Time is of the essence of this contract and all of the conditions thereof.

This contract and the said earnest money shall be held by International Bank for the mutual benefit of the parties hereto.

In testimony whereof, said parties hereto set their hands this 27th day of April, A. D. 1891.

CHARLES HASTERLIK.

HERBERT E. BUCKLEN.

Per H. S. Merritt & Co., Agts."

On that day the contract was signed, and immediately upon its signature, Merritt, and Elmer Dwiggins, a real estate

agent representing Hasterlik, went to the International Bank where the contract and a certified check drawn by Bucklen on the Fort Dearborn National Bank of Chicago, of the same date as the contract for $1,000, were deposited. The contract and check were sealed in an envelope, across the back of which Merritt and Hasterlik wrote their names. On the back of the envelope was also indorsed:

"Chicago, April 27, 1891.   Deliver only on joint request of Charles Hasterlik and H. S. Merritt & Company, agents of H. E. Bucklen."

Shortly after the execution of the contract an abstract of title was delivered by Hasterlik to Merritt and by him handed to K. R. Smoot, Bucklen's attorney, for examination. Smoot objected to the title, and in response to a request by appellee's attorneys to put his objections in writing, made a written statement containing the following objections:

First. That certain deeds in the chain of title were insufficiently acknowledged, to-wit: One from Zaphna Lake and wife to Nathan C. Hills, dated March 22, 1843; one from Nathan C. Hills and wife to Isaac Loomis, dated July —, 1843; and one from Isaac Loomis to John P. Emerson, dated February 2, 1846.

Second. The uncertainty of description in the " Carter" conveyance.

Third. That there was outstanding against the property an incumbrance to the amount of $7,000, dated April 17, 1890, made by Hasterlik, and unpaid.

Fourth. Taxes for the year 1890, upon said premises and special assessments.

Hasterlik's attorneys replied June 10, 1891, claiming that the objections to the title were not well taken; and by reference to the statutes of the State in which the several acknowledgments were taken, and citations therefrom, endeavored to convince Smoot of the sufficiency of the proof of the execution of these deeds; they also endeavored to demonstrate that there was no uncertainty in the description in the " Carter" conveyance, and also stated that the incumbrance

for $7,000 would be released when Bucklen notified his wil-
ingness to complete the purchase, and that the taxes for 1890
had been paid, referring Smoot to the record for a verifica-
tion of their statement.   A number of letters passed between
the attorneys of the respective parties, Mr. Smoot finally
insisting upon his objection to the title, and refusing to yield
in the matter.

Thereafter, July 22, 1891, a bill was filed in the Circuit
Court of Cook County, by Hasterlik against Bucklen and
the International Bank, asserting his right to the $1,000
earnest money, alleging that Bucklen had failed to comply
with his contract, and that he, Hasterlik, had elected to de-
mand said earnest money as liquidated damages. The
prayer was that the money be paid to him, and that said
contract be annulled.

Matters remained in this situation until November 4, 1891,
when the bank filed its bill of interpleader, making Haster-
lik, Bucklen and Merritt, parties defendant, and praying
that the parties might be required to litigate with each
other their right to said fund.   Answers were duly filed by
Hasterlik and Bucklen, each claiming the fund.   Whereupon
the court entered a preliminary decree, finding that the bill
of interpleader had been properly brought; and ordering the
complainant to pay the $1,000, less $75 solicitors' fees and
$9 court costs, into court.   Upon the hearing of the matters
in issue between the claimants, a final decree was entered
February 6, 1893, awarding the earnest money to Hasterlik.
Bucklen appeals from this decree.

Appellant insists that no complete agreement was ever
made, because the written contract, together with a check
for $1,000, was given in escrow to the International Bank,
to be delivered only upon the joint order of the contracting
parties.   Appellant does not deny the authority of Merritt
& Co. to make a contract for him, but insists that the
delivery in escrow subject to a joint order, left the instru-
ment one which could be enforced only when a joint or-
der for delivery had been made.   The evidence shows that
prior to the written contract being placed with the check in
escrow, it was delivered and  treated by both parties as a

completed instrument; and appellant, by all his subsequent acts, recognized it as such. His demand for the check was not placed upon any insistence that a contract had never been made, or if made had been recalled by a placing in escrow, but such demand is by the terms thereof, based upon his assertion that Hasterlik had failed to comply with the contract, and that it "has" become inoperative.

It is also urged that the suit of appellee was, and the decree of the court below is, a proceeding to enforce a forfeiture, which is a thing that a court of equity will not do. It is undoubtedly a rule with courts of equity not to enforce either a penalty or a forfeiture. 2 Story's Eq., Sec. 1319; Vale v. Drexel, 9 Brad. 446; Hornburg v. Baker, 1 Peters 232–236; Popham v. Bumpfield, 1 Ver. 339; Livingston v. Tompkins, 4 Johns. Ch. 416–431; Smith v. Jewett, 40 N. H. 530.

If the decree of the Circuit Court is to be considered as the mere enforcement of a forfeiture, it can not be sustained.

If appellant unjustifiably refused to carry out his contract and if appellee did all that was of him required, then appellee was entitled to recover, and have from appellant such damage as in consequence of such breach he, appellee, had sustained.

It appeared upon the hearing that there had been, since making of the contract, a decline of ten per cent in the value of the property in question. This amounts to much more than $1,000. We think that for the purposes of a court of equity, such proof of a decline in the value of the property sold, was sufficient to establish that appellee had sustained damage to more than the amount of the decree; and that the award of the court below was not the enforcement of a penalty or forfeiture, but the giving of compensatory damages shown to have been actually sustained.

We come, therefore, to a consideration of the principal question in the case, viz.: Was the title shown by the abstract such a one as appellee, under the contract, was bound to accept?

Objection was and is made to the proof of execution

— certificates of acknowledgment — of three deeds under which appellee derived title; these were a conveyance by Zaphna Lake and wife to Nathan C. Hills, dated March 22, 1843; recorded November 8, 1843.

A conveyance by Nathan C. Hills and wife to Isaac Loomis, dated July —, 1843; recorded November 8, 1843.

A conveyance by Isaac Loomis to John P. Emerson, dated February 2, 1846; recorded August 19, 1847.

These deeds had, when the abstract of title was delivered to appellant been on record in this county for forty-three years, they being each for the conveyance of eighty acres.

By the abstract it appears that by parties claiming title under these conveyances, eighteen deeds of the land now in question have been from time to time recorded, each being apparently upon a sale of the property. By the abstract it also appears that twelve mortgages made by parties claiming title under the deeds, the acknowledgments of which are now under consideration, have been placed upon record, eleven of which the abstract shows have been released; these mortgages appear to have been respectively made to secure the payment of large sums of money, and there is nothing tending to show that the records thereof do not represent actual and *bona fide* transactions.

Two subdivisions of portions of the property apparently conveyed by Lake, Hills and Loomis, in 1843 and 1846, have, as shown by the abstract, been placed upon record by parties claiming under such conveyances. One of these, recorded January 29, 1870, divided twenty acres into twelve blocks, and another recorded January 7, 1871, divided block 3 and the west half of block 4, of such subdivision, into lots. The recording of other instruments is shown by the abstract, from which it appears that Zaphna Lake was not living February 6, 1871, and that Isaac Loomis was an unmarried man at the time of the conveyances apparently made by him. The property seems by the abstract to have been sold in 1848 for the taxes of 1847, and in 1852 for the taxes of 1851. No tax deeds appear to have been issued, and the property does not appear to have been sold or forfeited for taxes at any other

time.  Nor does there appear to be of record any title hostile to that derived under the conveyances, the validity of which is questioned.

For a period reaching beyond the forty years last past, such has been the law of this State that lands are annually sold or forfeited for taxes, yearly levied.  Such taxes, if paid, are almost without exception paid by persons claiming an interest under some claim of title to the premises. When, therefore, it appears by an abstract of title that for more than forty years lands have not been sold or forfeited for taxes, save for those of two years, and it also appears that by such abstract that during this period there has been but one record title to such lands, and no title adverse to this is known to have ever been held or asserted, a fair presumption arises that the taxes upon such premises have during such term been paid by those claiming under such record title.  Under these circumstances, were the three deeds, to the proof of which objection was made, entitled to be considered as ancient documents, of the execution of which no further proof is required?  It is enough to entitle a document to be admitted in evidence to show that it bears upon its face marks of having been executed at least thirty years since, and that it comes from the custodians who would have possession of it if it were genuine.  Such document proves itself.  Wharton on Ev., Secs. 194–732–1359.

To entitle a deed to be admitted, some evidence in addition to proof of antiquity is required.  Where possession has accompanied a deed, that of itself furnishes sufficient evidence of its authenticity to entitle it to be read without further proof, if it be more than thirty years old; possession is not, however, essential to admissibility; other things equivalent to it, or explanatory matter clearly indicating ownership, may justify its admission.  Wharton on Ev., Sec. 199; Greenleaf on Ev., Sec. 144; Goodwin v. Jack, 62 Maine 416; Osborne v. Trines, 25 N. J. Law, 633–663; Harland v. Howard, 79 Ky. 373; Applegate v. Lexington, 117 U. S. 255; Caruthers v. Eldredge, 12 Gratt. 670.

In Whitman v. Henneberry, 73 Ill. 109, the Supreme Court of this State said :

" It is difficult to lay down a general rule as to the character of proof necessary to be given; but where the deed comes from the proper custody, and the facts and circumstances are proven to the court, from which it may reasonably be inferred that the deed has had an existence for over thirty years, such ought to be sufficient, where it is entirely free from any just ground of suspicion.

" Indorsements or memoranda upon a deed or ancient paper have been considered as circumstances indicating that they are genuine, where such indorsements or memoranda are of such a character as to show to a cautious mind that they would not be there had the paper been a forgery.

" In addition to this, if it be established that the deed has been of record for over thirty years, such ought to be a strong fact in its favor, although it may not have been recorded in the place required by law."

In Haven v. Sea Shore Land Co., 20 Atlantic Rep. 497, there had, as in the present case, been no possession under the deed, but the court say that just such use had been made under it as would in the usual and ordinary course of such transactions have been made, had the persons dealing with it known it to be an honest paper.

In the present case these deeds have for many years been spread upon the public records of title to land; many transactions of great importance have apparently been had upon faith in the genuineness of these documents, so that, taking into consideration the great value the lands apparently conveyed by these instruments have had, it is almost inconceivable that if these deeds be forgeries, no one has, in the forty years during which they have been upon record, asserted a title hostile to those who have so long been claiming under them.

The deeds having for more than forty years been recorded in the proper office, numerous recorded transactions of large importance running through a period of many years having been had under them, the taxes for so many years having

apparently been paid by those claiming thereunder, and no hostile title being shown to have ever existed or been asserted, we think that so far as these deeds are concerned, the abstract showed a title free from reasonable doubt.

This view of the case renders unnecessary any discussion of the sufficiency of the several certificates of acknowledgment attached to these instruments.

It is insisted that appellee, not having removed the incumbrance of $7,000, which by the terms of the contract he was to do, and not having actually tendered a deed, can not complain of any default upon the part of the appellant. As to the removal of the incumbrance, the court, upon conflicting oral testimony heard in open court, found that appellee had the means, and was able, ready and willing, and offered to forthwith discharge such incumbrance, and to have the same released and canceled, but that appellant, by his attorney and agent, waived the release and cancellation of the same.

Such finding, being so had, is conclusive, unless it clearly appears to be against the weight of the evidence. Metcalf v. Bradshaw, 145 Ill. 124; Coon v. Olsen, 91 Ill. 273; Patterson v. Scott, 142 Ill. 138.

We regard the evidence as sustaining the finding.

Appellant has not at any time placed his refusal to carry out his contract upon the existence of this incumbrance, or the failure to prepare and tender a deed, nor did he ever intimate that if these things were done he would perform; he all the while knew that appellee was ready to do these things, and his attitude continually was, in effect, a statement that it would be useless for appellee to discharge the incumbrance or tender a deed.

We agree with appellant in his contention that his counsel could not waive the requirements of the contract, or make a new bargain for him (appellant). The contract required the furnishing of an abstract showing a title free from material defects, and a conveyance of a good title, that is, one free from reasonable doubts; that is, a title that is not reasonably or fairly questionable in the opinion of competent persons. Close v. Stuyvesant, 132 Ill. 607, 618, 620.

The furnishing of such an abstract, and the giving of such title, were things which the counsel of appellant had no power to waive; his failure to object to actual defects, or his opinion that material objections were untenable, would not conclude appellant; but as to the details by which the contract appellant had made was to be carried out, his counsel, employed to protect him and see that he obtained what he had bargained for, might make such arrangements as were consistent with the agreement, and in no way affected appellant's rights. Whether the incumbrance was removed one day or another, made no difference, so that it was in due season discharged before appellant was called upon to pay or further perform, and so that he in apt time received, as promised, a title free and clear from lien or incumbrance. Hampton v. Specknagle, 9 Sergt. & Rawle, 212; Danziel v. Crawford, 1 Par. Select Eq. Cases, 37; Pickering v. Staples, 5 Sergt. & Rawle, 106; Sugden on Vendors, 521, Ed. of 1873.

Where a vendee objects to the title, a tender of a deed which he declares he will not accept, is unnecessary. Hampton v. Specknagle, 9 Sergt. & Rawle, 212; Tierman v. Bland et al., 15 Penn. St. 429; Lyman v. Gedney, 114 Ill. 388–408–410; Hunter v. Daniel, 4 Hare, 420–432; Webster v. French, 11 Ill. 254–276–278; Shepler v. Green, 31 Pac. Rep. 42.

No objection to the character of the abstract itself—that it was not such as was called for by the contract, was made by appellant; the objections were entirely to its contents, not at all that it was not such an one as appellant was bound to receive.

So, too, upon the trial in the court below, no objection to the introduction of the abstract in evidence was made; we therefore regard the objection now urged, that it was not shown to be admissible as evidence under the "Burnt Record Act," as coming too late. Such insistance can not be urged for the first time in an appellate court. Nothing appears to warrant an attack upon the abstract, as not such as appellee should have furnished; an objection of that kind, which, if valid, would be obvious upon a brief inspec-

tion, should have been made within a short period after it was submitted for examination.   Carbine v. Pringle, 90 Ill. 202, 204; Miller v. Shaw, 103 Ill. 277–285.

In Chicago & A. R. Co. v. Keegan, 31 N. E. 505, cited by appellant, it affirmatively appeared that the abstract did not fulfill the conditions of the "Burnt Record Act," and the trial court refused to admit it.

The objection to the description in the deed to Leslie Carter is not urged in this court.

It is true, as urged by appellant, that the rights of appellee were not enlarged by the filing by the International Bank of the bill of interpleader; neither were they by such proceedings diminished; the rights of the parties having come under equitable cognizance, they are to be adjudicated and adjudged in accordance with equitable principles; neither a penalty nor a forfeiture will, in such tribunal, be enforced, but compensation, which is the rule in equity, will be awarded for actual damage shown to have been incurred. No more than this has been awarded, and the decree of the Circuit Court is affirmed.

MR. PRESIDING JUSTICE GARY.

The result in this case is right, but it has been reached in an irregular manner, and the decree is, in form, one that the appellee is not entitled to; but it is less beneficial to him, and less prejudicial to the appellant than the case regularly presented would require.

When an interpleader is awarded, the original complainant is out of the case, and the defendants should make their claims against each other by such allegations and offers as if they were original litigants.   First Nat. Bk. v. West River R. R., 46 Vt. 633; 2 Dan. Chy. 1569.

Now, the only bill which Hasterlik could maintain against Bucklen is for specific performance, upon which, as relief, he might have obtained a decree that the money now in controversy be paid to him, and that Bucklen pay the residue within a time fixed, and that in default of payment, Bucklen be foreclosed, or at the election of Hasterlik, that the

land be sold, and that for any deficiency Hasterlik have a personal decree against Bucklen. Vail v. Drexel, 9 Ill. App. 439, and cases there cited.

The falling value of the land, and the present financial stringency, would make such a decree so much worse for Bucklen, that he has good reason to be satisfied with a decree that Hasterlik must be content with, as he procured it.