ASA WHITMAN *et al.*

*v.*

MATHEW HENEBERRY.

1. ANCIENT DEEDS—*proof to admit in evidence.* Deeds more than thirty years old are called ancient deeds, and they are admitted in evidence without proof of execution; but before this can be done, it must appear that the instrument comes from such custody as to show a reasonable presumption of its genuineness, and facts and circumstances must be proven which will establish the fact that the instrument has been in existence the length of time indicated by its date.

2. Indorsements or memoranda upon the deed may be considered as circumstances indicating that it is genuine, when they are of such a character as to satisfy a cautious and discriminating mind that they would not be there had the paper been a forgery; and if it be established that the deed has been on record for over thirty years, this will be a strong fact in its favor, although it may not have been recorded in the place required by law.

3. Where a deed was shown to have been in existence for over fifty years, and in the custody of the grantee and his heirs, who were claiming the land under it, and who paid the taxes on it from year to year, and it also appeared that it was recorded, in 1820, in the proper office, it was *held*, that the proof was ample to admit the same in evidence as an ancient deed. It is not necessary that the party claiming under such deed should take actual possession of the land to entitle the same to be read in evidence.

4. CONVEYANCE—*presumption and proof as to time of its delivery.* While it is true that a deed will be presumed to have been delivered on the day it

bears date, yet the presumption is not conclusive, but may be overcome by proof.

5. Where a deed from the patentee of a tract of military bounty land, bearing date prior to the issue of the patent, contained a recital of the patent, its date, the land granted by it, and the name of the person to whom granted, and the certificate of acknowledgment was dated after the issue of the patent, and the proof tended strongly to show that the grantee in the deed did not, in fact, purchase the land until after the patent was issued: *Held,* that the proof was sufficient to show that the deed was not delivered until the patent issued, and therefore the deed was not void.

6. DECREE—*as evidence in a collateral proceeding.* Where the court has jurisdiction of the subject matter and of the persons of those interested in a proceeding for the partition of lands, the decree and proceedings will be admissible in evidence to establish a link in the chain of title in an action of ejectment, notwithstanding there may be error in the proceedings.

7. EVIDENCE—*to prove heirship.* Where title to land is deduced through a decree of partition to divide the land between the heirs of a deceased owner, the adjudication of the court having jurisdiction, finding who were the heirs-at-law of the deceased owner, is *prima facie* evidence of who were the heirs and owners of the land whose interests were decreed to be sold, and in an action of ejectment brought by such purchaser against a stranger to the partition suit, the plaintiff is not bound to produce evidence of heirship outside of such decree, in the absence of proof to the contrary. The doctrine that judgments and decrees are evidence only in suits between parties and privies, has no application to such a case.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

Messrs. BANGS & SHAW, and Messrs. McCULLOCH, STEVENS & WILSON, for the appellants.

Messrs. BURNS & BARNES, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by Mathew Heneberry in the circuit court of Marshall county, against appellants, to recover a certain quarter section of land in Marshall county. The venue of the cause was changed to Peoria county, where a trial was had before a jury, which resulted in a verdict in favor of appellee. The court overruled a motion for a new trial, and rendered judgment upon the verdict.

The land in controversy was patented to Mica Clark, October 21, 1818.

The appellee, in order to establish title in himself, introduced in evidence—

*First*—An exemplified copy of the patent.

*Second*—A copy of a deed from Mica Clark to Jehosophat Eldred, which bears date March 29, 1818, but acknowledged, as appears by the certificate of a notary public attached to the deed, March 29, 1819.

*Third*—A copy of a deed, dated November 5, 1863, from Chas. D. Hodges, commissioner, to appellee. This last deed was made on a public sale of the land by virtue of a decree of the circuit court of Pike county, rendered in a certain cause instituted by the heirs of Jehosophat Eldred, deceased, to partition the lands of said deceased among themselves.

The patent, the original deed from Clark to Eldred, and the deed from Hodges to Heneberry, were all burned in the office of Burns & Barnes, in Lacon, on the 16th day of April, 1871.

The deed from Clark to Eldred was not acknowledged as required by the law in force at the time it was executed. It was, however, allowed to be read in evidence by the court as an ancient deed, and in this, it is insisted by appellants, the court erred, for the reason, as is claimed, the proper foundation was not laid to permit the instrument to be read as an ancient deed.

Deeds that are more than thirty years old are called ancient deeds, and they are admitted in evidence without proof of execution; but before this can be done, it must appear that the instrument comes from such custody as to show a reasonable presumption of its genuineness, and facts and circumstances must be proven which will establish the fact that the instrument has been in existence the length of time indicated by its date.

It is difficult to lay down a general rule as to the character of proof necessary to be given; but where the deed comes from the proper custody, and facts and circumstances are proven to the court from which it may reasonably be inferred that the

deed has had an existence for over thirty years, such ought to be sufficient, where it is entirely free from any just ground of suspicion.

Indorsements or memoranda upon the deed or ancient paper have been considered as circumstances indicating that they are genuine, where such indorsements or memoranda are of such a character as to show a cautious and discriminating mind that they would not be there had the paper been a forgery. *Smith v. Rankin*, 20 Ill. 14.

In addition to this, if it be established that the deed has been on record for over thirty years, such ought to be a strong fact in its favor, although it may not have been recorded in the place required by law.

Before this deed was read to the jury, evidence was introduced which tended to show that Jehosophat Eldred, in 1819, sent one of his sons, from his residence in New York, to New Hampshire to purchase lands in the military tract in this State; that about twenty quarter sections were purchased, including the lot in question; that in 1820 Eldred moved from New York to Illinois, and brought the patents and deeds from the patentees with him; that in June, 1820, the patents and deeds were sent by Eldred to Edwardsville by one of his sons, and there left for record.

There appeared upon the deed the following: "No. 7759, recorded volume 4, page 130." It was proven by one Irwin B. Randall, that in 1820 Josiah Randall was recorder in Madison county, and Barton Randall was deputy; that the indorsement above was in the handwriting of one of the two. He also testified that he, as early as 1836, examined the record in which the deed was recorded and the entry book; that the books are now as they were in 1836. The handwriting, ink, and regularity of the books, show the same now as they did in 1836, and the work appears to have been done in the regular course of business; that the entry book No. 4, page 320, showing deed from Mica Clark to Jehosophat Eldred, delivered with others to Ward Eldred, is in the handwriting of Barton or John H. Randall; that the books and records have all the time

remained in the office of the recorder of Madison county as a part of the land records of the county.

It was also proven, Jehosophat Eldred claimed the land under the deed and paid the taxes until his death, which occurred in 1845. After Eldred died, the deed, together with the patent and tax receipts, was found with his papers, and taken possession of by his children and heirs, who had possession of the deed and paid the taxes until 1856, when the deed and patent and tax receipts were delivered to Hodges, who then had charge of the land for the heirs and paid taxes up to 1863, when he sold to Heneberry, and upon making the sale delivered the deed and patent and tax receipts, thirty-two in number, over to him, who had the possession and custody of the papers up to the time they were all burned in the office of Burns & Barnes, in 1871.

This evidence was proper for the purpose of laying a foundation for the introduction in evidence of the deed from Clark to Eldred, and we are of opinion the evidence was ample to allow the deed to be read.

The deed was shown to be in existence for a period of over fifty years, and shown to be in custody of Eldred and his heirs, who were claiming to own the land under it, and paying the taxes from year to year.

We are aware of no act that could have been done by Eldred or his heirs that would have entitled them, or their grantee, to a more favorable consideration in a court of justice in regard to the deed, unless they had taken actual possession of the land under the deed, which in law they were not bound to do in order to be entitled to read it in evidence as an ancient deed.

It is, however, urged by appellants, that the deed bears date before the patent issued, and for that reason is void, and hence should not have been admitted in evidence. If the deed was executed and delivered to Eldred before the patent issued, under the act of Congress it was void, and would not convey the title of Clark to the land. But was the deed delivered before the patent issued?

8—73D ILL.

While it is true the presumption is a deed was delivered on the day it bears date, yet that presumption may be overcome by proof. It is the well established doctrine of the common law, that a deed does not take effect until delivered. It will not operate to pass title to the land—it is not the act of the grantor until delivered. It is the act of delivery which puts the paper into the possession of the grantee which gives it life and validity. Until that is done it is no deed.

Even if it be true that the deed was dated and signed by Clark before the patent issued, yet if it was not delivered until after the patent issued, the deed must be held to be valid to transfer the land.

What, then, are the facts, as disclosed by the record, in regard to time of the delivery of the deed?

In the first place, the deed contains a recital of the patent, its date, the land it contains, and the name of the person to whom granted, which it could not contain had it been prepared and delivered before the patent issued.

In the next place, the certificate of acknowledgment signed by the notary public is dated after the issue of the patent. It is insisted the figure 9 indicated that it had originally been 8, but the preponderance of the evidence by those who had the deed, and inspected it by the aid of a glass, is clearly opposed to such a theory.

In addition to this, the evidence all tends to show that Eldred did not make his purchase of military lands until 1819. Appellants, themselves, introduced in evidence a paper, which is dated June 3, 1819, and recites that Ward Eldred bought of Joseph Law eleven quarter sections, including the land in controversy, by a misdescription. The date to this paper is not inconsistent with the date of the notary's certificate on the deed of March 28, 1819. The land may have been contracted for in March, and the deed then made out, but the transaction not closed and deed delivered until June 3. As this paper is a receipt for the purchase money of eleven tracts, and the closing up of the transaction, such is not improbable.

The whole of the evidence considered, we think the fact fully

established that the deed was not delivered until after the patent issued.

It is insisted by appellants, that the court erred in allowing the deed from Hodges, the commissioner, to appellee, and the copy of the proceedings in the circuit court of Pike county, to be read in evidence.

The objection made to the introduction of this evidence was not well taken. The court had jurisdiction of the subject matter, and the decree rendered showed that all the heirs of Jehosophat Eldred had united in filing the bill to divide the lands of which their father died seized—that the court acquired jurisdiction over the person of each of the heirs. Even if there was error in the proceedings, the court had jurisdiction over the subject matter and the person. The proceedings can not be attacked collaterally. *Mulford* v. *Stalzenback*, 46 Ill. 303; *Huls* v. *Buntin*, 47 Ill. 396.

In regard to the question of notice, presented by the record, it appears that John Comstock had no title to the land until April, 1868, when he procured deeds from the heirs-at-law of Mica Clark. At the time he made this purchase, he had full notice of the deed from Clark to Eldred, and, as appears from his own evidence, he had a copy of the old deed with him at the time. Aside from this fact, he was present at the sale made by Hodges to appellee, when a public announcement was made of the claim of title from the patentee to the commissioner. So far as Comstock is concerned, there can be no doubt but he purchased with full notice of appellee's title.

On the 25th day of September, 1869, Comstock conveyed the land to Julius S. Starr, and appellants are his tenants.

From Starr's own testimony it is apparent he had sufficient notice of the existence of the deed from Clark to Eldred to put him upon inquiry, and he can not, therefore, be regarded as an innocent purchaser, without notice.

It is insisted by appellants, that the court erred in giving and refusing instructions. The instructions given in this case are very voluminous, and we have neither the time nor disposition to enter upon a critical review of them; the principal

points arising, however, upon instructions, have been disposed of as we considered the questions involved in the case.

At the request of appellee, the court gave the following instruction:

"The adjudication of the Pike county circuit court upon the question as to who were the heirs of Jehosophat Eldred, is sufficient *prima facie* who were the heirs and owners of the land in question whose interests were decreed to be sold as such heirs, and the purchaser under said decree would not be bound to produce evidence outside of said decree and adjudications of said court as to the heirship and ownership."

And refused instructions 18, 19, 22, 23 and 26, asked by appellant, presenting an opposite view.

In this we perceive no error. The adjudication of the circuit court of Pike county ought at least to be regarded as *prima facie* evidence of the heirship of Jehosophat Eldred, deceased. Who were the heirs, was one of the questions for determination before the court. Evidence was heard upon this point, which was followed by a judicial determination that certain parties were the legal heirs. The doctrine that judgments and decrees are evidence only in suits between parties and privies, has no application to a case like this. The decree of the Pike circuit court was not introduced as *per se* binding upon the rights of appellants, but, as was said in the case of *Barr* v. *Gratz*, 4 Wheaton, 219, as an introductory fact to a link in the chain of the plaintiffs' title, and constituting a part of the muniments of his estate.

Objections have been urged to other instructions, but it is not necessary to consider them. The law properly arising upon the facts in the case was substantially given to the jury by the court.

The verdict rendered by the jury was fully justified by the evidence; and even if the court has erred in the instructions, when it is apparent the jury have arrived at a correct result, we will not disturb the judgment.

The judgment of the circuit court will, therefore, be affirmed.

*Judgment affirmed.*