LYDIA BRADLEY

*v.*

H. W. LIGHTCAP.

*Opinion filed February 18, 1903.*

1. EJECTMENT—*effect where defendant denies plaintiff's claim of common source of title.* Denial by the defendant in ejectment of plaintiff's claim of common source of title requires the plaintiff to prove both chains of title back to the common source, and if he shows the better title from such source he is entitled to recover.

2. SAME—*no objection that plaintiff's evidence shows defendant's title to be bad.* In tracing the title of both parties in ejectment back to the common source it is no objection that the evidence offered by the plaintiff for that purpose shows the defendant's title to be bad.

3. SAME—*when alleged error in rulings on evidence is harmless.* Alleged error in admitting in evidence copies of deeds showing title in the plaintiff back of the common source is not harmful to the defendant, since, if the plaintiff has proved that both parties claim from a common source, it is not necessary that he trace his title back of such source.

4. DEEDS—*copy of ancient deed admissible although not properly acknowledged.* A deed which has been of record more than thirty years is an ancient deed, and a certified copy thereof is admissible in evidence although the deed was not acknowledged as required by the law in force when it was executed.

5. RES JUDICATA—*doctrine not confined to matters actually determined.* The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also all matters properly involved which might have been raised and determined.

6. MORTGAGES—*mortgage is a mere incident to the mortgage debt.* The title conveyed to a mortgagee is a mere incident of the mortgage debt, available only for the purpose of securing payment, the term of its existence being measured by the debt, and when the debt is paid, discharged, released or barred by limitation the mortgagee's title is extinguished by operation of law.

7. SAME—*after decree the rights of parties are governed by the statute.* After a judgment or decree has been entered the rights of the parties are no longer governed by the contract, and a mortgagee, by becoming the purchaser at the foreclosure sale, assumes an entirely new relation, arising out of the statute and not depending upon any privity of contract.

8. SAME—*foreclosure sale transforms the lien into a statutory one.* A foreclosure sale discharges the land from the mortgage or trust deed and transforms the contract lien into a statutory lien under

the certificate of purchase, and the land is released as security for any balance of the debt over and above the purchaser's bid.

9. LIMITATIONS—*right of the legislature to pass statutes of limitation.* The legislature has power to pass statutes of limitation, and such statutes, even if they affect existing rights, are not unconstitutional if a reasonable time is given for the assertion of the right before the bar takes effect.

10. SAME—*statutes of limitation do not rest upon presumption.* Statutes of limitation do not rest upon presumptions, but prescribe limitations, founded in wisdom and policy, upon the rights or remedies to which they are applicable.

11. SAME—*statutes of limitation are based upon laches.* Statutes of limitation are based upon *laches,* and in their final effect they may not only bar the remedy but extinguish the right.

12. SAME—*when rights of purchaser are extinguished.* If a foreclosure decree does not purport to vest title, neither the decree nor the certificate of purchase constitutes color of title, and if the holder of the certificate fails to take out a deed within the time required by law she loses all rights in the premises, notwithstanding she was the legal holder of the notes secured by the trust deed foreclosed. (*Lightcap* v. *Bradley,* 186 Ill. 510, adhered to.)

13. CONSTITUTIONAL LAW—*section 30 of act on judgments and decrees is constitutional.* Section 30 of the act on judgments and decrees, which provides that a certificate of purchase shall be null and void if a deed is not taken out within a certain time, is constitutional, and does not impair the rights of parties under mortgages executed before the act took effect.

. WILKIN and BOGGS, JJ., dissenting; HAND, J., concurs specially.

APPEAL from the Circuit Court of Fulton county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

W. W. HAMMOND, and CHIPERFIELD & CHIPERFIELD, for appellant.

WALLACE & LACEY, GEORGE B. FOSTER, and H. W. MASTERS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is the same ejectment suit in which H. W. Lightcap was plaintiff in the circuit court of Fulton county and Lydia Bradley was defendant, which was before us on a former appeal, and is reported under the title of

*Lightcap* v. *Bradley,* 186 Ill. 510.   A judgment against the plaintiff, Lightcap, was then reversed, and the cause was remanded to the circuit court for further proceedings in accordance with the views expressed in the opinion then filed.   The case was re-instated in the circuit court, and at the May term, 1901, it was again tried before the court and a jury, when, at the conclusion of all the evidence, the court instructed the jury to find a verdict for the plaintiff.  The defendant, exercising her right, under the statute, to a new trial upon payment of costs, (Hurd's Stat. 1899, p. 730,) paid the same and made a motion for a new trial, which was allowed.  At the September term, 1902, of said circuit court, a jury having been waived, the cause was tried before the court, resulting in a finding for the plaintiff.   Judgment was entered accordingly, and the defendant appealed.

The first question raised relates to the admissibility of certified copies of certain deeds offered in evidence by the plaintiff and admitted over the objection of defendant.  Plaintiff filed the affidavit provided for by the statute, that he claimed title through a common source with the defendant. (Hurd's Stat. 1899, p. 729.) The defendant filed an affidavit denying that she claimed title through such source.   This affidavit denying the common source of title imposed upon the plaintiff the necessity of proving that the parties did claim title from a common source, and this he did.  The effect of the defendant's denial was only to leave upon him the burden of proving both chains of title back to the common source, and if he showed a better title from such source he would be entitled to recover.   It is no objection to the exercise of such right that the evidence offered proves defendant's title to be worthless. (*Smith* v. *Laatsch,* 114 Ill. 271; *Village of Chillicothe* v. *Burr,* 185 id. 322.)  In addition, plaintiff proved title by a regular chain of conveyances from the government of the United States, and the conveyances objected to were back of the common source of title.   Having

proved, beyond all question, that the parties claimed title from a common source, it was not necessary that plaintiff should trace his title back of that source, and if there was any error in the ruling of the court it was not hurtful to the defendant. For this reason the court declined in *Pollock* v. *Maison*, 41 Ill. 516, to inquire whether an affidavit was sufficient to authorize the introduction in evidence of a copy of a deed. The objections, however, appear to have been without merit, as they related to the acknowledgment of deeds all of which had been of record more than thirty years, and were admissible as ancient deeds without any proof of acknowledgment. It is proper to admit in evidence a certified copy of a deed which has been of record more than thirty years, although not acknowledged as required by the law in force when it was executed. (*Whitman* v. *Heneberry*, 73 Ill. 109; *Stalford* v. *Goldring*, 197 id. 156.) We are also of the opinion that the certificates of acknowledgment, with the certificates of conformity and proof of the statutes of Indiana, were sufficient, in law.

On the last trial the evidence respecting the title of the parties was the same as upon the first trial, as contained in the record which was reviewed in *Lightcap* v. *Bradley, supra,* and every proposition of law now raised arose upon the former record. There is no question presented or discussed on this appeal, either relating to the propositions of law submitted to the trial court or assignments of error or in the argument of counsel, that could not have been properly raised on the former record. The decision at that time settled every question which might have been raised and every objection which might have been made whether then raised and made or not. The doctrine of *res judicata* embraces not only what has been actually determined in a former suit, but also extends to any other matter which might have been raised and determined in it. (*Harvey* v. *Aurora and Geneva Railway Co.* 186 Ill. 283; *Pease* v. *Ditto,* 189 id. 456.) · A

litigant cannot be allowed to have his case heard in this court partly at one time and partly at another. It is said by counsel that there is some difference in the proof of the time that the defendant took possession of the premises, but there is no difference whatever which could in any manner affect the rights of the parties. The defendant's bill, by which she sought to have the release and discharge of a portion of the land originally covered by the mortgage set aside and canceled and her mortgage foreclosed upon all the land, including the premises in controversy, was filed February 22, 1872. It was in the summer of 1872, after the bill had been filed, that she now claims to have taken possession of the land through an agent, by taking charge of it and allowing hay to be cut from it. The court declined to set aside the transaction by which the release of a part of the land from the encumbrance was secured, but entered a decree of foreclosure for the land now in question. She bought the land at the master's sale under decree of foreclosure, and the question involved is not affected by the change in the evidence respecting the time that she took possession.

Counsel for appellant say that the principal question which they now seek to raise upon the record is the constitutionality of section 30 of chapter 77 of the Revised Statutes of this State, and the point relied upon is, that said statute is repugnant to section 10 of article 1 of the constitution of the United States, forbidding the impairment of the obligation of contracts, and the same provision in section 14 of article 2 of the constitution of this State, and also section 1 of the fourteenth amendment to the constitution of the United States. The argument is based both on the fact that the statute was enacted after the trust deed to defendant was executed, and also upon the ground that the statute was rendered unconstitutional by the construction which we gave to it on the former appeal. It is argued that the law as construed by this court entered into the contract at the time it was

made; that under the law as construed when the trust deed was executed, there was an estate and title in the mortgagee in the mortgaged premises which remained in him after the land was sold at the foreclosure sale; that the mortgagee held title to the mortgaged property subject only to an equity of redemption in the mortgagor, which was recognized only by courts of equity, and that after the foreclosure and purchase of the mortgaged premises the mortgagee still held title, although the certificate of purchase became null and void. Counsel say that by the former decision we gave a new construction to these questions, and thereby rendered the statute unconstitutional, as impairing the obligation of the contract; and to this question some attention, we think, may properly be given.

The trust deed in this case was executed August 13, 1868, and numerous cases cited in the opinion delivered on the former appeal fully and amply demonstrate that no new construction of the law was adopted, but that there was a strict adherence to the principles laid down in previous decisions. Among the cases not then cited, it was held in *Ryan* v. *Dunlap*, 17 Ill. 40, (decided in 1855,) that the mortgage debt is the principal thing and the mortgage a mere incident to it; that a transfer of the debt by assignment or delivery of the note would generally carry the mortgage, in equity, and payment would discharge the mortgage lien, and that a verbal or written discharge of the debt by its payment in money, property or other securities would discharge the lien, and without a release or satisfaction entered upon the mortgage itself or the margin of the record. A mortgage has never been assignable at law in this State, and the title of the mortgagee, such as he has, cannot be transferred at law. If he assigns the debt, with or without an assignment of the mortgage, the mortgage will pass only in equity. At law it will remain in the mortgagee, in trust for the holder of the debt. In *Lucas* v. *Harris*, 20 Ill. 166, (decided

in 1858,) it was held that the mortgage is but an incident attached to the debt; that the mortgage interest, as distinct from the debt, is not a fit subject of assignment and has no determinate value, and that the debt and mortgage cannot be separated and placed in different hands. In *Vansant* v. *Allmon*, 23 Ill. 30, (decided in 1859,) it was held to be a settled and familiar principle that the debt is the principal thing and the mortgage only an incident, —a mere security for the payment of the debt,—and that a release of the debt secured by the mortgage need not be under seal.

It was the constant holding of this court, both before and since the execution of this trust deed, that the title conveyed to the mortgagee is a mere incident of the mortgage debt, available only for the purpose of securing payment; that the term of its existence is measured by the debt, and when the debt is paid, discharged, released or barred by limitation, the mortgagee's title is extinguished by operation of law. So, also, the court has always held that after a judgment or decree the rights of the parties are ·no longer governed by the contract, but by the law. *Mason* v. *Eakle*, Breese, 83, (decided in 1824,) is the first of an unbroken line of cases which so decide. In that case the obligation of the contract was to pay the sum mentioned in a note with twenty per cent interest, but after the judgment the contract was no longer in force; the right to six per cent interest rested alone upon the statute. In this case, the obligation of the contract was to pay the sum mentioned in the notes secured by the mortgage, with ten per cent interest, but after the rendition of the decree the obligation of that contract ceased and the decree drew only six per cent interest by virtue of the statute, and after the sale there was a right of redemption by paying the amount of the bid, with a new rate of interest fixed by the statute providing for redemption. We do not see how it can be said that the mortgage contract is in force. If that

obligation was in force after the decree, then the debt has been bearing ten per cent interest all this time.

Furthermore, if the construction given to the law respecting the title of a mortgagee had been changed or modified after the execution of the trust deed this case would not be affected, since the statute did not act upon the obligation thereby created, and it is not claimed, as we understand, that there has been any change in judicial construction as to the rights of a purchaser at a foreclosure sale. The statute, (Rev. Stat. chap. 77, sec. 30, p. 625,) the substance of which was given in our former opinion, went into effect July 1, 1872, and is as follows: "When the premises mentioned in any such certificate shall not be redeemed in pursuance of law, the legal holder of such certificate shall be entitled to a deed therefor at any time within five years from the expiration of the time of redemption. The deed shall be executed by the sheriff, master in chancery or other officer who made such sale, or by his successor in office, or by some person specially appointed by the court for the purpose. If the time of redemption shall have elapsed before the taking effect of this act, a deed may be given within two years from the time this act shall take effect. When such deed is not taken within the time limited by this act the certificate of purchase shall be null and void; but if such deed is wrongfully withheld by the officer whose duty it is to execute the same, or if the execution of such deed is restrained by injunction or order of a court or judge, the time during which the deed is so withheld or the execution thereof restrained shall not be taken as any part of the five years within which said holder shall take a deed."

At the time the statute was passed the notes and trust deed were in full force and effect, and under it the rights and obligations of the parties remained the same, and even the remedies provided by the law were in no manner affected. The defendant had several different

remedies which she might have pursued for the collection of her debt. She had the right to have the land sold by the trustee under the power. She could have sued McCune, the maker of the notes. She could have maintained ejectment in the name of the trustee for the possession of the land, for the purpose of applying the rents and profits to the satisfaction of the debt, or could have foreclosed by any of the methods provided by law. None of these remedies were changed or in any manner affected by the statute. She adopted the method of an ordinary foreclosure, and the statute did not operate upon that remedy until after the decree and sale, when the contract right had been fixed and determined by the court and the contract created by the trust deed had come to an end, so far as this land was concerned. When the defendant purchased the land at the sale under the decree she assumed an entirely new relation, arising out of the statute and not depending on any privity of contract. The sale discharged the land from the trust deed and transferred the lien created by the contract into a statutory lien by the certificate of purchase, and the land was released as security for the balance of the debt. (*Smith* v. *Smith*, 32 Ill. 198; *Seligman* v. *Laubheimer*, 58 id. 124; *Ogle* v. *Koerner*, 140 id. 170; *Davis* v. *Dale*, 150 id. 239.) This new relation came into existence by the purchase at the master's sale on October 27, 1879, seven years after the passage of the act in question, and that relation was the same in defendant's case as it would have been if some other person had been the purchaser.

That the legislature might enact this law without violating any constitutional provision seems to us beyond question. The power of the State to pass statutes of limitation is unquestioned, and it has always been held that such statutes, even if they affect existing rights, are not unconstitutional if a reasonable time is given for the assertion of the right before the bar takes effect. Whether the statute pre-supposed redemption by the mortgagor

or whether any statute of limitations rests upon a presumption is not material, although it is now considered as an established rule that such statutes do not rest upon presumptions, but prescribe limitations, founded in wisdom and public policy, to the rights or remedies to which they are applicable. (3 Parsons on Contracts, 62; 19 Am. & Eng. Ency. of Law,—2d ed.—146.) All statutes of limitation are based on *laches.* (*Mettler* v. *Miller*, 129 Ill. 630.) In their final effect the statutes may not only bar the remedy but extinguish the right. In *Jackson* v. *Lamphire*, 3 Pet. 281, the court said: "It is within the undoubted power of State legislatures to pass recording acts by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the time limited, and the power is the same whether it is dated before or after the recording act. Though the effect of such law is to render the prior deed fraudulent and void, it is not a law impairing the obligation of contract. Such, too, is the power to pass acts of limitation, and their effect. Reason and sound policy have led to the adoption of laws of both descriptions, and their validity cannot be questioned." An example of such a law is found in *Vance* v. *Vance*, 108 U. S. 574. By the Civil Code of Louisiana the property of a tutor was tacitly mortgaged in favor of the minor from the date of the appointment of the tutor, as security for his administration and the responsibility which resulted from it. There was a tacit mortgage under this law, which had been in force from October 15, 1859. In 1869 a new constitution was adopted, providing that tacit mortgages should cease to have effect against third persons after January 1, 1870, unless duly recorded, and the legislature passed an act to carry this provision into effect. It was held that the statute was in the nature of a statute of limitations; that the obligation of the contract was not impaired, and that the State may establish, alter, lengthen or shorten the period of prescription of existing rights,

provided a reasonable time be given in the future for complying with the statute.

It is true that the laws providing for the enforcement of contracts become a part of the contract when made, and any subsequent law which impairs the right acquired under such laws necessarily impairs the obligation. Appellant relies upon a number of cases, all of which come within the rule that laws changing the obligation of the contract or imposing conditions not expressed in it violate the constitutional provision. *Bronson* v. *Kinzie*, 42 U. S. 311, is one of these cases. John H. Kinzie executed a bond July 13, 1838, to Arthur Bronson, and secured its payment by a mortgage on certain premises in the town of Chicago. When the mortgage was made the mortgagor had no right of redemption after the sale, and there was no limitation upon the right of the mortgagee to a sale of the premises to satisfy the debt. The legislature of this State, on February 19, 1841, passed a law providing that the mortgagor should have a right of redemption within twelve months from the day of sale, and his creditors should have such right for three months thereafter. Another act was passed February 27, 1841, directing that the property should be appraised, and should not be sold at all unless two-thirds of such appraisement should be bid therefor. The court said that the State might shorten the period of time within which claims should be barred by the Statute of Limitations and might exempt property from execution, although the new remedy might be less convenient than the old and in some degree render the recovery of debts more difficult, but the State could not change the nature and extent of existing remedies so as to materially impair the rights and interests of the mortgagee. At the time the mortgage was executed the right to a sale free and discharged from any interest remaining in the mortgagor was a part of the contract, and there was an absolute right to a sale for the satisfaction of the debt. The new laws provi-

ded that the estate of the mortgagor should not be extinguished by a sale but should continue twelve months thereafter, with a like estate in his judgment creditors for three months afterward, and also imposed a new condition that prevented any sale unless two-thirds of the amount at which the property had been valued by the appraisers should be bid therefor. The doctrine that such a statute was void was re-affirmed in *McCracken* v. *Hayward*, 43 U. S. 608, where the provision that property levied on under an execution should not be sold unless it would bring two-thirds of its valuation according to the opinion of three householders was held unconstitutional. In *Lessee of Grantly* v. *Ewing*, 44 U. S. 407, the same rule was applied to a similar law of the State of Indiana. In *United States ex rel.* v. *Quincy*, 4 Wall. 535, the relator, VonHoffman, was the owner of coupons of the city of Quincy, attached to bonds issued when the law authorized the city to collect a special annual tax sufficient to pay the annual interest on the bonds, which was to be set aside and held separate from other city revenues as a fund specially pledged for the payment of such interest. But for a subsequent act of the legislature there would have been no difficulty in enforcing the payment of the interest by the collection of a tax sufficient to meet it as it accrued from time to time, and it was held that the obligation of the contract could not be impaired by a withdrawal of the power to tax, which was in the nature of a trust for the enforcement of the agreement. *Edwards* v. *Kearzey*, 96 U. S. 595, was a case where a new constitution of the State of North Carolina exempted property from execution to such an extent as to impair the obligation entered into by the issue of bonds prior to the date of such constitution. It was held that if the exemptions were excessive, and fatal, in their magnitude, to the enforcement of a contract, so as to impair and practically destroy its value, the obligation would be impaired and the act would be void. None of these decisions are in point.

This statute was under consideration in *Ryhiner* v. *Frank*, 105 Ill. 326, where the court said: "The statute was one of limitation and affected only the remedy." And it was held to be a valid law, taking away no vested right and leaving a reasonable time for the pursuit of the remedy. *Terry* v. *Anderson*, 95 U. S. 628, was a case where the Statute of Limitations of the State of Georgia in force when the obligation was created did not bar the action until the expiration of twenty years from the time such action accrued. The legislature passed an act by which causes of action accruing prior to June 1, 1865, must be brought by January 1, 1870, or the right of action should be forever barred. It was held that the law was valid; that the question of time to be allowed was one of reasonableness, of which the legislature of the State was primarily the judge, and that the decision of that department could not be overruled by the courts unless a palpable error had been committed. The court said: "The parties to a contract have no more a vested interest in a particular limitation which has been fixed than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and as to the forms of actions or mode of remedy, it is well settled that the legislature may change them at their discretion, provided adequate means of enforcing the right remains." *Town of Koshkonong* v. *Burton*, 104 U. S. 668, was an action to recover an amount due on bonds, with interest coupons, issued January 1, 1857, by the town of Koshkonong, Wisconsin, under authority conferred by an act of the legislature. A limitation act was subsequently passed, which, it was contended, impaired the obligation of the contract. The court held the law valid, and that if a reasonable time, taking all the circumstances into consideration, was given by the new law for the commencement of an action before the bar should take effect the obligation of

the contract was not impaired. In *Wheeler* v. *Jackson*, 137 U. S. 245, where the ultimate effect of the statute was to extinguish the right, the court said: "It is a settled principle of this court that the legislature might prescribe the limitation for bringing suits where none previously existed, as well as shorten the time within which suits to enforce existing causes of action may be commenced, provided in each case a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of the suit before the bar takes effect."

Whether the former decision was conclusive of the constitutionality of the statute or not, there can be no doubt of its validity, and under repeated decisions the interest of the defendant in the premises after her purchase was only such as the certificate of purchase gave to her. There was a valid and binding decree of foreclosure, but it did not constitute color of title. A decree of strict foreclosure is color of title, because it purports to vest title. (*Chickering* v. *Failes*, 26 Ill. 507.) But this decree did not purport to vest the title in the defendant. The certificate of purchase was not color of title for the same reason. The foreclosure was not abortive in any respect, but a sale was regularly made and approved by the court and a certificate of purchase was issued and delivered to the defendant, which became void under the provisions of the statute through her neglect. When the certificate became void she ceased to have any interest whatever in the premises or any right to the possession.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILKIN, dissenting:

It is a rule of universal application that where a mortgagor, after foreclosure and sale, allows the time of redemption fixed by the statute and decree of foreclosure to expire without justifiable excuse, failing to make redemption his rights are forever gone. In *Stephens* v.

*Illinois Mutual Ins. Co.* 43 Ill. 327, the question being whether a mortgagor had an insurable interest in the mortgaged property after a decree of foreclosure and sale, we said (p. 331): "At the time of the fire, then, the position of Stephens was substantially that of a mortgagor with a right to redeem. * * * That in this position he would have had a substantial, insurable interest does not admit of doubt. His estate as mortgagor would not have been lost until the expiration of his right to redeem. In this State the purchaser under a sheriff's sale upon judgment and execution, or at a master's sale on foreclosure of a mortgage, acquires by his purchase no new title to the premises until the period of redemption has passed and he is entitled to a deed. His deed will relate back, it is true, to the beginning of his lien in order to cut off intervening encumbrances, but it will not carry back the absolute divestiture of title, as is evident from the fact that neither judgment debtor nor mortgagor can be called to account for rents and profits. His title becomes absolute only when his right to a deed accrues. If it is a sale under a decree of foreclosure, the mortgagor still has the estate of a mortgagor, with this qualification: that the amount and time of redemption have become absolutely fixed by the decree and sale, *and his estate will be absolutely divested if he fails to redeem within the allotted time.*" Jones, in his work on Mortgages, (vol. 2, sec. 1661,) lays down the same doctrine speaking of the rights of the parties after sale, and says: "The mortgagor still has the estate of a mortgagor, with this qualification: that the amount and time of redemption have become absolutely fixed by the decree of sale, and his estate will be absolutely divested if he fails to redeem within the allotted time."

Therefore, upon the expiration of the time of redemption, the rights of McCune as mortgagor, and of Prettyman, his grantee, were forever barred and foreclosed. Appellee was in the exclusive possession of the premises,

and had been for several months. Whether that possession, during the period of redemption, was so far by the acquiescence of the mortgagor or his grantee as to be lawful or not, there can be no serious question that after the expiration of the time for redemption she was the owner of the premises and entitled to the possession thereof, and, upon application to the master, entitled to a deed; and during the running of the period of five years in which she might lawfully have obtained a deed there can be no serious claim that any right or title remained in the mortgagor, or his grantee, Prettyman. It is true that by failing to take a deed within the five years her right to do so became barred under the statute of 1872, but the question now is, did the mortgagor, by that failure, become re-invested with the title, and if so, upon what principle did he do so? Manifestly, the statute of 1872, as one of limitation, affecting only the remedy of Mrs. Bradley to obtain a deed, could not operate to vest the title in any one else. To hold that it could, would be to defeat the act upon the ground of its unconstitutionality. (*Ryhiner* v. *Frank*, 105 Ill. 326.) Of course, there can be no two views as to the law applicable to the rights of a mortgagor where the mortgage debt has been paid or extinguished by lapse of time, in the absence of the foreclosure of his rights. In such case the title unquestionably reverts to him. But that is not the position occupied by the plaintiff in this case, whose grantor had been forever foreclosed and barred, and I am unable to perceive how it can be fairly said the appellant is without title because she failed to take a master's deed, and at the same time maintain that the mortgagor retained the title notwithstanding his failure to exercise the right to redeem. If by that failure his estate was "absolutely divested," (*Stephens* v. *Illinois Mutual Ins. Co. supra*, and Jones on Mortgages, *supra*,) it ought not to be said that the legal title remained in him as against the defendant in possession.

It is a rule always applied in actions of ejectment, that the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of his adversary. "The person who is in the actual and peaceable possession of land will be deemed to be rightfully in possession, and the burden of proof is upon him who would dispute that possessory title." (*Fitzgerald* v. *Quinn,* 165 Ill. 354, and cases cited.) "Prior possession alone is evidence of a fee, and although the lowest, until rebutted by a higher it must prevail." (*Keith* v. *Keith,* 104 Ill. 397, and cases cited. See, also, *Harland* v. *Eastman,* 119 Ill. 22.) This principle is so elementary that cases need scarcely be cited in support of it, and counsel must agree that if neither party has shown title to the premises in controversy, the possession of appellee cannot be taken from her and given to appellant.

I am aware that language was used in the opinions in the cases of *Peterson* v. *Emmerson,* 135 Ill. 55, and *Seeberger* v. *Weinberg,* 151 id. 369, that upon the failure to take a deed within the five year limitation the title is to be treated as being in the mortgagor. But the question was not involved in either of the cases. What was said on that question may, and I think should, be treated as mere *obiter.* It is not shown, nor is any attempt there made to show, how the legal title, after the failure to redeem, got back in the mortgagor, his grantees or heirs.

I have carefully sought for, but failed to find, authority to support the position that the mere failure of a purchaser at an execution or judicial sale to take a deed within the time limited by law operates to re-vest the title in the judgment debtor, or, in case of a foreclosure sale, in the mortgagor; nor can I perceive upon what principle a mere statute of limitations can be given that effect. My view is, that plaintiff below failed to show title in himself, and that the defendant, being in peaceable possession of the premises, has such a possessory title as ought to protect her against him, or any one else

without title seeking to oust her. In other words, the plaintiff could recover only upon the strength of the title in himself, and not upon the mere showing that the defendant in possession had no title. No one denies that every equity in the case is with her.

It may be said this conclusion leaves the appellee in possession of the property without title and without the right to acquire title, and hence would result in the anomaly of holding no one to be vested with or entitled to the title. If this were admitted it would furnish no sufficient reason for holding that the plaintiff below could recover in this action. It does not follow from what we have said that right to the legal title is in no one, although appellant is barred of all right to a master's deed and although her rights as mortgagee have been extinguished. A court of chancery might, I think, on a proper bill, upon the facts in this record, decree the title in her. It is only necessary, however, in this action, to hold that the plaintiff has failed to make out his case. I think the judgment of the circuit court should be reversed.

Mr. JUSTICE BOGGS, also dissenting:

I also dissent from the opinion of the majority of the court. The statutory enactment limiting the time in which the holder of a certificate of purchase may take a deed to five years after the expiration of the period allowed for redemption, (Rev. Stat. 1874, chap. 77, sec. 30,) must be read and construed in the light of the state of the law on that subject prior to the enactment of the section. "No statute enters a field which was before entirely unoccupied. It either affirms, modifies or repeals some portion of the previously existing law. In order, therefore, to form a correct estimate of its scope and effect it is necessary to have a thorough understanding of the laws, both common and statutory, which heretofore were applicable to the same subject. Whether the statute affirms the rule of the common law on the same point,

or whether it supplements it, supersedes it or displaces it, the legislative enactment must be construed with reference to the common law, for in this way alone is it possible to reach a just appreciation of its purpose and effect." (Black on Interpretation of Laws, sec. 95, p. 233.) The intention of the law-makers may be collected from the cause or necessity of the act, and statutes may be construed contrary to the literal meaning of the words. (*Castner* v. *Walrod*, 83 Ill. 171.) "It is universally conceded that one of the most efficient means in ascertaining the legislative intent in the adoption of a new statute is to consider it with reference to the state of the law before its adoption, and particularly with reference to the previous legislation on the same subject." (*Wright* v. *People*, 101 Ill. 126.) In ascertaining the real meaning of a statute we are not confined to the words, but may look to the prior law. *Wabash, St. Louis and Pacific Railway Co.* v. *Binkert*, 106 Ill. 298; *Catlett* v. *Young*, 143 id. 74.

What, then, was the state of the law with reference to the right of the holder of a certificate of purchase to take out a deed when said section 30 of chapter 77 was adopted? The section was enacted at the session of the General Assembly in the year 1872. In the case of *Rucker* v. *Dooley*, 49 Ill. 377, decided in this court in the year 1868, we were called upon to determine as to the efficacy of a certificate of purchase which had been issued at a sale made in 1838 and on which no application had been made for a deed until 1868,—a period of thirty years. During that period the land had been conveyed by holders of adverse title and the holder of the certificate of purchase had never been in possession. We there said (p. 380): "The applicant insists that there was no time limited within which the holder of a certificate of purchase was required to take out a deed after he became entitled to it. There is, it is admitted, no express legislation on this subject, but there are well established principles of law, quite as potential as positive legislation,

201—34

in the absence of legislation upon the subject. Secret liens, such as the certificate of purchase may justly be considered, no publicity being given to them by recording them, are not favored in law, and are not usually enforced to the overthrow of rights honestly acquired without any notice of such liens. The analogies of the law must be considered with reference to appellant's proposition. By statute a judgment is a lien upon land for seven years, and then, only, when an execution has been taken out 'within a year. * * * Pursuing, in some degree, this same analogy, and for the protection of purchasers for a valuable consideration, without notice of any lien, from the judgment debtor and those claiming under him, we should be inclined to hold, after the lapse of twenty years, being the longest time of limitation known to our laws, a sheriff's deed should not be executed to the holder of a certificate of purchase, not under legal disabilities, on the application of the holder to the sheriff, nor by any rule or order of court upon him for such purpose; that such lapse of time shall be considered an insuperable bar to its execution. If the application for a deed be made after the eight years and three months have elapsed, and within twenty years, the same must be made through the proper court by a rule upon the sheriff to show cause and on notice to parties interested, when the record should show the existence of intermediate purchasers from the judgment debtor, or shall otherwise appear, of the particular lot or tract of land described in the certificate. Although the statute requires the sheriff, on presentation of the certificate of purchase by the holder thereof, to make a deed to such holder if the land be not redeemed, it is in the spirit of this enactment that such presentation and demand for a deed shall be made within a reasonable time, and that reasonable time ought to be, and must be, considered as the time in which the judgment is a lien, plus the fifteen months allowed for redemption. After that time the deed

must be sought through the court where the judgment rests and from which the execution issued, and the action of the court on the application must depend on the circumstances of each case."

Within about three years after the rendition of this decision the General Assembly adopted said section 30, fixing five years as the period within which a deed should be taken by the holder of the certificate of purchase. The object and purpose of the enactment is too manifest to be in doubt. It was enacted in view of the holding of this court in *Rucker* v. *Dooley, supra,* that the holder of a certificate of purchase who had not entered into possession of the lands should present the same and receive a deed within a reasonable time, and that the time in which a judgment is a lien, viz., seven years, plus the fifteen months allowed for redemption from the sale, should be deemed a reasonable time, and that after that time a deed could only be had on application to a court, upon notice to those in possession of the land, and such application should be determined by the court in view of the circumstances of the case. The principle of this decision is, that the holder of a certificate of purchase, by failing to apply for and obtain a deed within the period of seven years, should be deemed guilty of *laches,* and for that reason denied the right to a deed if against the rights and interests of other parties in possession. It was then, and still remains, a fundamental rule that *laches* is not to be imputed to one who is in the peaceable possession of land. (*Mills* v. *Lockwood,* 42 Ill. 111; *Dorman* v. *Dorman,* 187 id. 154; *Wilson* v. *Byers,* 77 id. 76; *Boyd* v. *Boyd,* 163 id. 611; *Beck Lumber Co.* v. *Rupp,* 188 id. 562.) The possession is notice of the rights of the occupant, and he need not assert his right until occasion arises for him to do so. (*Parker* v. *Shannon,* 137 Ill. 376.) The doctrine of *laches* in respect of the assertion of the ownership of land can only be invoked by one in possession against one out of possession. (*Bush* v. *Stanley,* 122 Ill. 406.) If the pur-

chaser had obtained possession of the land, no rule of reason or justice would have justified a decision that mere efflux of time should operate to deprive him of the right to the legal title, for his possession was notice to every one of his rights to a deed, for *laches* could not be imputed to one in possession.

The rule announced in *Rucker* v. *Dooley, supra,* therefore had no application to fix the time in which the holder of a certificate of purchase who had obtained and retained possession of the land should be denied the right to demand a deed on the certificate. The law did not impute *laches* to a purchaser in possession and did not visit upon him the loss of any right because of his failure to take the evidence of title to land of which he had the possession and full beneficial enjoyment. The rule of law which was in force at the time of the adoption of said section 30 fixed a time within which a purchaser of land subject to redemption should, as against the possessor, obtain a deed, and denied him a deed on the ground of *laches* if he failed to obtain a deed within seven years after he became entitled to demand and receive the same. As is said by Mr. Black in his Interpretation of Laws, no statute enters a field which is entirely unoccupied. It either affirms, modifies or repeals some portion of the previously existing law. Said section 30 did not affirm or repeal the existing rule of law, but only modified it. The section was enacted in view of the state of the law and for the purpose of reducing the time fixed by this court in which the imputation of *laches* should become complete, from seven years to five years, but it was not intended to apply to the case of a party who had, under the sale, been allowed to enter into the possession of the land, and who, by retaining possession thereof, had given the world notice of his rights to a deed and against whom there could be no imputation of *laches*. It modified the law as announced in *Rucker* v. *Dooley, supra,* by reducing the time in which a purchaser at a judicial sale to whom

*laches* could be imputed should be allowed to take out a deed under such sale. It must be construed with reference to the prior existing law, and given application only to that class of cases to which the existing law applied. As was said in *Arthur* v. *Bonham*, 10 Mod. 148, (cited with approval in Black on Interpretation of Laws): "Again, the common law must be allowed to stand unaltered as far as is consistent with a reasonable interpretation of the new law. The general rule in the exposition of all acts of parliament is this: that in all doubtful matters and where the expression is in general terms, they are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature, for statutes are not presumed to make any alteration in the common law further or otherwise than the act does expressly declare, and therefore in all general matters the law presumes the act did not intend to make any alteration, for if the parliament had that design they would have expressed it in the act."

It is entirely consistent with the new act to give it application only to purchasers pure and simple,—those who have only such rights as grew out of the acceptance of their bids at the sale. The evil designed to be remedied by the new act was to shorten the time in which a purchaser who had but the bare right of the highest bidder should be allowed to take a deed and oust the party in possession of the land. There was no legislative intent to establish a rule as to a purchaser who had entered into possession and had neglected to take out a deed, and whose neglect had not and could not injure any one, and whose neglect did not justify the imputation of *laches*. That the enactment designed merely to shorten the time in which a purchaser should be allowed to oust the occupant of premises which had been sold at a judicial sale, and should not be used to perpetrate an indefensible wrong against one who, under the purchase, had, as here, occupied the premises for so many years, was clearly

foreign to the legislative intent. The established rules for construing statutes, as well as every dictate of natural justice, demand said section 30 shall not be deemed to apply to the case at bar.

While, as a general rule, legal titles prevail in ejectment, still ejectment cannot be maintained against one who is in the lawful and rightful possession of land. (*Stow* v. *Russell*, 36 Ill. 18; *Sands* v. *Wacaser*, 149 id. 530.) In those cases, and in many other cases cited in *Sands* v. *Wacaser*, the rule is established that facts which disprove that the defendant in an ejectment suit unlawfully withholds premises from the possession of the plaintiff, constitute a legal defense to the action.

In my opinion the judgment ousting the appellant from the possession of these lands should be reversed.

Mr. JUSTICE HAND, specially concurring:

I agree that the legal title is in appellee. I am of the opinion, however, that the equitable estate—the full beneficial interest—in the land is in appellant, and that she, being in possession, a court of chancery may protect her equitable interest and possession by enjoining the prosecution of this ejectment suit, and I do not agree to this opinion so far as it holds that the appellant has no equitable interest in said land.